

DA 13-0224

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 46

DONALD RUDOLPH STOCK,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. BDV 2012-848
                    Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad M. Wright, Wright Legal, P.C., Attorney at Law, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
                Attorney General, Helena, Montana

                Leo Gallagher, Lewis and Clark County Attorney, Tara Harris, Deputy
                County Attorney, Helena, Montana

                                Submitted on Briefs:  December 18, 2013
                                      Decided:  February 20, 2014

Filed:

                    _____
                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    A jury convicted Donald Stock (Stock) of felony incest involving his fourteen-year-old son, E.S., and six-year-old daughter, K.S., in violation of §§ 45-5-507(1), (4) and 45-2-101(8), MCA.  Stock was also convicted of evidence tampering in violation of § 45-7-207, MCA.  Stock received concurrent sentences of fifty years at the Montana State Prison, with twenty-five years suspended, on each count of felony incest.  He also was sentenced to a concurrent term of ten years for evidence tampering.  He appealed his conviction, which this Court affirmed.  *State v. Stock*, 2011 MT 131, 361 Mont. 1, 256 P.3d 899.  Stock also appealed to the U.S. Supreme Court, which denied certiorari.  *Stock v. Montana*, ___ U.S. ___, 132 S. Ct. 850 (Dec. 12, 2011).  Stock then petitioned for postconviction relief in the First Judicial District Court, Lewis and Clark County, alleging ineffective assistance of counsel.  The District Court dismissed Stock's petition, and he now appeals.  A restatement of the dispositive issue on appeal is whether the District Court erred in concluding that Stock's attorney did not provide ineffective assistance.  We affirm.

## BACKGROUND

¶2    In May 2009, fourteen-year-old E.S. disclosed to a school counselor that his father, Stock, was sexually abusing him.  Stock was subsequently charged with felony incest against E.S.  In August 2009, the State amended the Information to include a second count of felony incest involving Stock's six-year-old daughter, K.S., and one count of evidence tampering.

2

¶3     The State obtained a warrant to search Stock's computer for evidence that Stock was grooming his victims by showing them sexually inappropriate images.  Agent Wayde Cooperider of the Department of Justice's Computer Crime Unit conducted the search and discovered graphic images depicting young men engaged in homosexual activity, some of whom appeared to be underage.  He also discovered search terms including "7 year old having sex" and "Teenboyslove," along with sites that were visited including "gaysnboys_com," "don_stock@gallery.teenboyslove[1]txt," and "don_stock@www.boysmagic[1]txt."  Cooperider later testified that he retrieved these images from a password-protected computer with an assigned user name of "Donald Stock."  Cooperider summarized his findings in written reports.

¶4     The State filed a notice of intent to introduce the pornographic computer images based on M. R. Evid. 404(b) and § 26-1-103, MCA (the transaction rule).  Stock, represented by defense attorney Chad Wright (Wright), filed a motion in limine objecting to the admission of the pornographic computer images, arguing that the prejudice it would cause outweighed its probative value, and that the State could not prove that Stock was responsible for accessing the images and websites.  The District Court denied Stock's motion, concluding that the pornographic images were admissible pursuant to the transaction rule because it was directly related to elements of the incest charges with respect to both children, and that its relevance far outweighed any prejudice to Stock.

¶5     Stock's jury trial was held in March 2010, and lasted for seven days.  Agent Cooperider testified to Exhibits 74-79, which were his written summaries of the electronic evidence found on Stock's computer.  Thus, the State ultimately did not seek to

admit the pornographic computer images themselves. When the State offered Exhibits 74-79, Stock only renewed his objection to Exhibit 74 because it did not include the dates and times the files were created, modified, and accessed. The State added the appropriate information to Exhibit 74, and the District Court admitted all of the exhibits. Thus, the admitted electronic evidence about which Stock complains consisted of testimony and written descriptions of electronic images and computer search terms, and not lurid, graphic images of pornography.

¶6 The State presented complicated expert testimony regarding the DNA evidence that was collected from E.S.'s bed. The evidence was not conclusive, but the expert testimony indicated that Stock could not be excluded as a DNA contributor to DNA mixtures found in five areas of the bed, meaning that Stock's genetic information was present in the mixtures. During the State's closing argument, the prosecutor referenced this DNA evidence by saying, "Ask yourself how is it that Don Stock's DNA is all over that bed?" Stock did not object to this statement.

¶7 On direct appeal, Stock argued that K.S. should not have been allowed to testify via two-way electronic audio-video communication, that Stock should have been allowed to conduct a forensic interview of and call as a witness four-year-old Z.S, and that the electronic evidence was improperly admitted under the transaction rule. This Court affirmed the District Court on all issues. We did not reach the merits of the electronic evidence issue, finding that Stock failed to preserve for appeal any possible error arising out of the admission of the electronic evidence.

4

¶8    In October 2012, Stock, represented by attorney Wright, filed a petition for postconviction relief, setting forth three grounds upon which he claimed his trial attorney (Wright) provided ineffective assistance of counsel.  While Wright was assisted at trial by Gregory Jackson, Stock claims that only Wright provided ineffective assistance by failing to: 1) consult with a forensic computer examiner to evaluate the electronic evidence introduced at trial; 2) object to the introduction of the electronic evidence at trial; and 3) object to the prosecutor's allegedly improper statement during closing argument that Stock's DNA was found "all over" E.S.'s bed.  The District Court denied Stock's petition, stating "Wright did an excellent job in presenting pretrial motions . . . which were addressed by both the district court and the Montana Supreme Court."  It also found that even if Wright's representation was deficient, it would not have "created a reasonable probability that the outcome of the trial, or the sentence imposed on Stock, would have been any different."  Stock now appeals the District Court's denial of his petition for postconviction relief.

## STANDARD OF REVIEW

¶9    We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous, and whether its conclusions of law are correct.  *Camarillo v. State*, 2005 MT 29, ¶ 8, 326 Mont. 35, 107 P.3d 1265.  Ineffective assistance of counsel claims present mixed questions of law and fact that are reviewed de novo.  *Miller v. State*, 2012 MT 131, ¶ 9, 365 Mont. 264, 280 P.3d 272.

DISCUSSION

¶10     In his petition for postconviction relief, Stock asserted that Wright provided ineffective assistance of counsel at the trial level by failing to object to the introduction of the electronic evidence at trial, hire a forensic computer expert, and object to the prosecutor's reference to the DNA evidence during his closing argument. Stock also argues these issues on appeal, and additionally claims that the District Court did not correctly apply the test for evaluating his ineffective assistance of counsel claim.

¶11     ***Whether the District Court erred in finding that Stock's attorney did not provide ineffective assistance.***

¶12     The right to effective assistance of counsel is guaranteed by both the United States and the Montana Constitutions. U.S. Const. amend. VI; Mont. Const. art. II, § 24. The two-pronged *Strickland* test determines when this constitutional right has been violated. *Strickland v. Wash.*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To satisfy this test, a defendant must show 1) that counsel's performance was deficient and 2) that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. A defendant must satisfy both prongs of this test in order to prevail on an ineffective assistance of counsel claim. *Whitlow v. State*, 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861 (citing *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S at 697, 104 S. Ct. at 2069. As noted, the District Court rejected Stock's claims on this basis, concluding

that even if Wright's conduct was constitutionally deficient, Stock failed to show that he was prejudiced.

¶13 For the reasons discussed below, we agree with the District Court that Stock made an insufficient showing on the prejudice prong. As an initial matter, however, we address two important points relating to the issue of deficiency. First, Stock is represented in this postconviction case by the same counsel (Wright) who Stock alleges provided deficient representation at his trial. Essentially, Wright is challenging his own performance at trial, arguing that it was inadequate and that his errors were so serious as to deprive Stock of a fair trial. As our cases recognize, ineffective assistance of counsel claims usually require a defendant to develop a record as to "why" counsel did or did not perform as alleged, thus allowing the court to determine whether counsel's performance was ineffective or objectively reasonable. *See State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095; *Whitlow*, ¶¶ 19-20. As a result, Wright's role in this case is one of both advocate and witness. This scenario implicates ethical considerations.

¶14 Rule 3.7(a) of the Montana Rules of Professional Conduct states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

7

The identical rule is contained in Rule 3.7(a) of the American Bar Association (ABA) Model Rules of Professional Conduct.[1] Comment [1] to ABA Rule 3.7 notes that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Comment [2] further explains that "[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." The reasoning underlying the exceptions listed in paragraphs (1), (2), and (3) of Rule 3.7(a) is articulated as follows:

> Paragraph (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Paragraph (a)(2) recognizes that where the testimony concerns the extent and value of legal services rendered *in the action in which the testimony is offered*, permitting the lawyers to testify avoids the need for *a second trial with new counsel* to resolve that issue. Moreover, in such a situation the judge has firsthand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony. Apart from these two exceptions, paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party.

ABA Model R. Prof. Conduct 3.7, Comments [3], [4] (emphasis added, paragraph break omitted). Comment [6] to ABA Rule 3.7 emphasizes that "[i]n determining if it is permissible to act as advocate in a trial in which the lawyer will be a necessary witness,

---

[1] Although we have not adopted the ABA standards outright, we have previously cited them as persuasive authority. *See e.g. State v. Couture*, 2010 MT 201, ¶ 76 n. 4, 357 Mont. 398, 240 P.3d 987; *State v. Norquay*, 2011 MT 34, ¶¶ 39-42, 359 Mont. 257, 248 P.3d 817; *State v. Criswell*, 2013 MT 177, ¶ 55, 370 Mont. 511, 305 P.3d 760 (McGrath, C.J., concurring). The comments to the ABA standards are particularly useful where the language of the ABA standard is identical, or nearly identical, to our own rule. *See e.g. In re Marriage of Perry*, 2013 MT 6, ¶ 21, 368 Mont. 211, 293 P.3d 170.

the lawyer must also consider that the dual role may give rise to a conflict of interest that will require compliance with" ABA Rule 1.7 (Conflict of Interest: Current Clients) or ABA Rule 1.9 (Duties to Former Clients).

¶15    It does not appear that the first two exceptions listed in Montana Rule of Professional Conduct 3.7(a) apply to the present case.  As to Rule 3.7(a)(1), despite assumptions that Stock (through Wright) makes in his brief on appeal, the question of Wright's deficiency is not "uncontested."  To the contrary, the State responds in its answer brief that it has *not* conceded the first prong of the *Strickland* test.  As to Rule 3.7(a)(2), Wright's testimony does not concern legal services rendered "in the action in which the testimony is offered."  Rather, it concerns legal services rendered in a prior action.  In this regard, Comment [3] to ABA Rule 3.7 indicates that the purpose of the exception in paragraph (a)(2) is to "avoid[ ] the need for a second trial with new counsel" to resolve questions about legal services in the first trial.  Finally, as to the third exception in Rule 3.7(a), nothing in the record establishes whether disqualification of Wright would work "substantial hardship" on Stock and whether Wright addressed potential conflicts of interest with his client.

¶16    The parties have not briefed the foregoing issues implicated by Rule 3.7(a), and the District Court did not enter any findings of fact bearing on this matter.  Nevertheless, the notion of defense counsel in a criminal trial subsequently serving as the defendant's counsel in a postconviction proceeding which challenges the effectiveness of counsel's trial conduct raises important ethical considerations.  While we cannot decide the matter on the record in the present case, we caution counsel and the district courts that this Court

9

considers this a matter of importance which should be addressed, and a proper record made, at the outset of any postconviction proceeding where the petitioner's counsel contends that his or her trial performance was ineffective.

¶17 The second preliminary point we address concerning the issue of deficiency is the fact that Stock makes no effort in his brief on appeal to establish the first prong of the *Strickland* test—i.e., that his counsel's conduct "fell below an objective standard of reasonableness." *Whitlow*, ¶ 20. Apparently because the District Court rejected his claim under the second prong of the test, Stock's argument on appeal focuses entirely on that prong (i.e., prejudice).[2] Yet, even if we agreed with Stock's arguments on prejudice, we could not grant the relief he seeks—reversal of his convictions—absent a persuasive argument and showing that the prejudice resulted from objectively unreasonable acts or omissions of his counsel. *Strickland* says that there is no reason for *a court* deciding an ineffective assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one. 466 U.S at 697, 104 S. Ct. at 2069; *accord Whitlow*, ¶ 11. However, *Strickland* does not entitle *a defendant* to prevail based on only one prong of the analysis. As noted, our review of an ineffective assistance of counsel claim is de novo, *Miller*, ¶ 9, and the fact that the District Court rested its decision on the prejudice prong does not relieve Stock of his burden to demonstrate the validity of his claims under *both* prongs of the test in his arguments to this Court on appeal. It thus was

---

[2] We note that the State, in responding to Stock's petition, chose to focus its arguments on the issue of prejudice. However, the State did not concede the question of deficiency. The State maintained that "even if" Wright was ineffective, the deficiency did not prejudice Stock's right to a fair trial.

incumbent on Stock to explain—with reference to "prevailing professional norms," *Whitlow*, ¶ 20—why his counsel's performance was deficient *and* that he suffered prejudice from that deficient performance.[3]

¶18 Nevertheless, although Stock's claims arguably could be rejected based on his omission of any analysis relating to deficiency, we agree with the District Court that he has made an insufficient showing under the prejudice prong. Accordingly, we shall proceed to the merits of Stock's claims with an analysis of prejudice and without considering whether counsel's performance was objectively unreasonable.

¶19 To establish prejudice, "the defendant must show that, but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different." *St. Germain v. State*, 2012 MT 86, ¶ 11, 364 Mont. 494, 276 P.3d 886 (citing *State v. Miner*, 2012 MT 20, ¶ 12, 364 Mont. 1, 271 P.3d 56.) A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Riggs v. State*, 2011 MT 239, ¶ 12, 362 Mont. 140, 264 P.3d 693 (citing *Robinson v. State*, 2010 MT 108, ¶ 12, 356 Mont. 282, 232 P.3d 403). The prejudice inquiry focuses on whether counsel's deficient performance renders the result unreliable or the proceedings fundamentally unfair. *Riggs*, ¶ 12.

---

[3] Although Stock addressed the question of deficiency in his District Court filings, we have explained that the Rules of Appellate Procedure "preclude[ ] parties from incorporating trial briefs or any other kind of argument into appellate briefs by mere reference. Simply put, appellate arguments must be contained within the appellate brief, not within some other document." *State v. Ferguson*, 2005 MT 343, ¶ 41, 330 Mont. 103, 126 P.3d 463. Additionally, we have noted that allowing parties to incorporate trial arguments into appellate briefs by reference would undermine the word and page limitations on appellate briefs. *Ferguson*, ¶ 42.

¶20     Initially, Stock argues that the District Court's finding that he was not prejudiced by Wright's representation was not based on the totality of the evidence presented at trial. Stock implies that the District Court had only a passing knowledge of the underlying trial record, and therefore its finding that Stock suffered no prejudice was incorrect. In applying the prejudice prong of the *Strickland* test, the court must consider the totality of the evidence before the judge or jury. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069. Stock's assertion that the District Court's ruling was not based on the totality of the evidence presented is simply unsupported. The District Court's Order cites to the record extensively, evidencing that it did indeed consider the totality of the evidence presented at trial. Therefore, the District Court did not misapply the *Strickland* test.

¶21     Stock argues that Wright's failure to properly object to the summaries of the electronic evidence constitutes ineffective assistance of counsel, and that it is generally improper to admit evidence that stands for the proposition that homosexuality establishes a propensity to engage in sexual activities with children. However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2067 (citing *U.S. v. Morrison*, 449 U.S. 361, 364-65, 101 S. Ct. 665, 667 (1981)); *see also Heddings v. State*, 2011 MT 228, ¶ 33, 362 Mont. 90, 265 P.3d 600 ("A claim of constitutionally ineffective assistance of counsel will not succeed when predicated upon counsel's failure to make motions or objections which . . . would likely not have changed the outcome of the proceeding."). Even if Wright's failure to properly object fell below an objective standard of reasonableness, such an error does not warrant

setting aside Stock's judgment unless the error would have had an effect on the judgment. As the State correctly points out, even if Wright had properly renewed an objection at trial to the admission of Agent Cooperider's testimony and the summary exhibits, it appears probable that the District Court would have overruled the objection, based on the fact that the District Court denied Wright's motion in limine made prior to trial regarding the pornographic computer images. The only prejudice to Stock may have been that failing to renew his objection prevented a challenge on appeal to the admissibility of the evidence. *See Stock*, ¶¶ 45-48. Stock, however, has offered no analysis to support a claim that there would have been a different outcome on appeal had this Court considered admission of the evidence. Therefore, Stock has not met his burden of showing "[a] reasonable probability . . . that the outcome of [his] direct appeal would have been different" had Wright objected to the admission of the electronic evidence. *Rogers v. State*, 2011 MT 105, ¶ 40, 360 Mont. 334, 253 P.3d 889.

¶22    Stock also argues that Wright was ineffective for failing to hire a computer expert. In support of this argument in the District Court, Stock attached to his petition the report of forensic computer expert James Holmes, whose opinion was based only on an examination of Agent Cooperider's report, and not on an examination of the computer itself. However, on appeal Stock makes no reference to Holmes' report, and he fails to adequately develop this issue. Assuming Wright's actions in not hiring a computer expert were deficient, Stock fails to prove this decision prejudiced him. Holmes' report asserts that the computer from which the electronic evidence was extracted was not password protected as stated by Agent Cooperider, thereby supporting Stock's claim that

13

he was not responsible for accessing the electronic evidence. The State responds with an affidavit from Agent Cooperider, who explains that Holmes' conclusion was based on a typographical error that Agent Cooperider made in his original report, and that Stock's computer was indeed password protected. The State also notes that Wright called a witness at trial who testified to seeing E.S. using Stock's computer on more than one occasion, thereby allowing the jury to infer through circumstantial evidence that E.S. accessed the electronic evidence, or alternatively, that Stock accessed it. This testimony accomplished the same purpose that Holmes' report would have, had it been introduced at trial, in that it would have caused the jury to question who was responsible for accessing the evidence. Therefore, because the question had already been raised, Stock cannot prove that but for Wright's failure to hire a computer expert, a reasonable probability exists that the result of the proceeding would have been different. *St. Germain*, ¶ 11.

¶23 Stock argues that Wright was ineffective for failing to object to the prosecutor's "misleading" statement made during his closing argument that the State had found Stock's DNA "all over" E.S.'s bed. To support his petition, Stock included a report by forensic scientist Elizabeth Johnson, who reviewed the reports of the DNA evidence and concluded that the prosecutor had mischaracterized that evidence because the DNA examination "did not include every inch of the surface of the mattress." Johnson, however, agreed that Stock could not be ruled out as a contributor to five different DNA mixtures on E.S.'s bed. The State contends that the prosecutor's statement was not

misleading, and even if it was, Stock failed to prove the prejudice prong of the ineffective assistance of counsel claim.

¶24 As previously stated, a defendant is prejudiced when he or she shows that "but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different." *St. Germain*, ¶ 11. Even if Wright's failure to object was deficient, Stock does not prove that he suffered any prejudice. Johnson's report does little to support Stock's argument. Even if the prosecutor intended the phrase "all over" to be understood literally, both the State's expert and Johnson agree that Stock's genetic information was present in five different mixed samples taken from E.S.'s bed. Stock has failed to show that any confusion about the DNA evidence was a result of the prosecutor's reference to DNA in his closing argument, compared to the extensive and complicated expert testimony regarding the DNA evidence. Additionally, the jury was informed that statements made during closing remarks could not be considered as evidence. Thus, Stock's claim that he was prejudiced by Wright's failure to object to the closing argument is essentially unsupported, and necessarily fails.

## CONCLUSION

¶25 For the foregoing reasons, we affirm the District Court's denial of Stock's petition for postconviction relief.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE

15

Justice Michael E Wheat, concurring.

¶26 I generally agree with the result and reasoning of the Court. I write separately to address the problems created where, as here, counsel alleges his own ineffective assistance on appeal after representing a client at trial.

¶27 It is both honorable and ethical for a lawyer to put his client's interests before his own and admit to error. However, evaluating claims of ineffective assistance of counsel requires an *objective* analysis of the lawyer's professional conduct or lack thereof. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064-65. An inherent conflict of interest arises when counsel alleges his own ineffectiveness, and this conflict could easily cloud a lawyer's objective examination of his own professional conduct. *See People v. Bailey*, 9 Cal. App. 4th 1252, 1254-55 (Cal. App. 1992); *In re Fountain*, 74 Cal. App. 3d 715, 719 (Cal. App. 1977).

¶28 Montana Rule of Professional Conduct 1.7 provides that a conflict of interest exists when "there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." It is hard to imagine a more personal interest than the competency and success of one's own work. In an effort to obtain a new trial, counsel may be encouraged to raise questionable allegations of their own ineffectiveness. Alternatively, a lawyer who wants to avoid consequences for his error may subtly underemphasize or fail to identify his own deficient professional conduct. Finally, counsel may simply fail to recognize certain claims on appeal due to his own ineffectiveness on a certain issue. In any of these scenarios, the attorney's objective examination of his own error is cast into doubt. Additionally, an attorney who

16

is ineffective at trial may later be accused of being ineffective on appeal, leaving IAC open to further attack without a final resolution. *Bailey*, 9 Cal. App. 4th at 1255.

¶29 This conflict of interest is especially concerning since the client makes "decisions concerning the objectives of representation" but relies on the conflicted lawyer to decide whether a claim has merit. Mont. R. Prof. Conduct 1.2(a) (2009). The client often lacks the technical legal expertise to decide whether an IAC claim has any merit, and so relies on the attorney to recognize his own deficiency and remedy it. That is likely the case here, where counsel's alleged deficiency was technical and unobvious, involving objections to summaries of electronic evidence, expert witnesses in computer technology, and objections to improper statements during closing. With no expertise of his own and likely without consulting outside counsel, a client in this situation is bound to rely on advice from a lawyer who has an interest in the client's decision. At bare minimum, counsel must obtain the client's informed written consent to representation burdened by such a conflict of interest. Mont. R. Prof. Conduct 1.7(b)(4). Comment [18] of ABA Rule 1.7 notes that "[i]nformed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client." Yet even this protection is insufficient where a client lacks the technical knowledge to decide the merits of an IAC claim and must rely on his conflicted attorney to decide whether or not an error has occurred.

¶30 We should require an attorney in this situation to withdraw representation as soon as he is aware of his own ineffectiveness. First, if counsel became aware of his error

17

before the resolution of trial, this would prompt a district court to conduct a *Gallagher* inquiry to immediately determine whether IAC has occurred and whether new counsel or a new trial is needed. *See State v. Gallagher*, 1998 MT 70, ¶¶ 24-26, 288 Mont. 180, 955 P.2d 1371. If ineffectiveness does not become apparent until after trial, this requirement would effectively mandate new counsel to objectively examine the professional conduct in question and advise the client on the validity of an IAC claim. That fresh look at the trial record creates an appropriate check on the trial attorney, as new counsel would have no incentive to minimize the errors of trial counsel, and would not be prone to file frivolous IAC claims in pursuit of success at trial. By requiring a fresh look at counsel's conduct, a client would receive objective advice as to whether his counsel was actually deficient, and could better decide whether an appeal on those grounds has merit.

/S/ MICHAEL E WHEAT