DA 13-0755

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 223

JAYDEE HAAGENSON,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV-12-0475
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          JayDee Haagenson, self-represented, Shelby, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

          John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  July 23, 2014
Decided:  August 19, 2014

Filed:

_____
                    Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     JayDee Haagenson appeals from an order of the Eighth Judicial District Court, Cascade County, denying his petition for postconviction relief.  We affirm.

¶2     A restatement of the issue on appeal is whether the District Court erred in denying Haagenson's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In May 2009, the State filed an information in Cascade County charging Haagenson with deliberate homicide, a felony, in violation of § 45-5-102, MCA.  The charge was based upon eyewitness testimony.  An autopsy report indicated that the victim died of asphyxia due to neck compression.  Haagenson and the State entered into a plea agreement on May 17, 2010, pursuant to which Haagenson agreed to plead no contest to the felony offense of mitigated deliberate homicide in violation of § 45-5-103, MCA.

¶4     The court conducted a hearing to allow Haagenson to change his plea.  After Haagenson agreed that there was a sufficient factual basis for his no contest plea, the trial court heard testimony from the primary lead investigator for the case.  The court then accepted Haagenson's no contest plea. On July 15, 2010, the court sentenced Haagenson to 40 years imprisonment with no eligibility for parole, supervised release, or other conditional release.  Haagenson filed a motion to withdraw his no contest plea, which the court denied.  Haagenson appealed from the denial of his motion to withdraw his plea, but later waived his appeal to pursue an action for postconviction relief.

¶5     On June 21, 2012, Haagenson, acting as a self-represented litigant, filed a petition for postconviction relief under § 46-21-101, MCA.  Haagenson claimed ineffective assistance of

counsel (IAC) against his trial and appellate counsel. Haagenson argued, inter alia, that his trial counsel was ineffective for failing to give him a copy of a report by a forensic pathologist containing potentially exculpatory opinions. According to Haagenson, he would not have pleaded no contest had he known of the report. He also argued that his appellate counsel was ineffective for filing an *Anders* brief. The District Court ordered, and the State filed, a response to Haagenson's petition for postconviction relief. The State maintained that Haagenson had notice of the contents of the report, and that he signed a statement waiving his right to an appeal after discussion with his appellate counsel.

¶6 The District Court considered affidavits from Haagenson's former counsel, including an affidavit of Haagenson's trial counsel in which she acknowledged that she could find "no trace notation, letter, date stamp or other indication that Mr. Haagenson was provided a physical copy of Dr. [Thomas L.] Bennett's April 16, 2010 report." In the report, which pre-dated Haagenson's change of plea, Dr. Bennett wrote:

> Based upon the information available at the time of this report, it is my opinion that there is no forensic basis in this autopsy report to opine that death is a result of "asphyxia due to neck compression." Further, there is nothing in this autopsy report that indicates a deliberate attempt to cause this death. Rather, I would offer that, with no anatomic cause of death found at the autopsy, and with no autopsy findings that would support the prolonged application of pressure over the vessels of the neck as the cause of injury or death, that either the cause of death is best left as "undetermined," or the mechanism of reflex cardiac arrest be invoked.

¶7 The District Court found no evidence in the record suggesting that trial counsel ever delivered a copy of the report to Haagenson. The court "[found] it troubling, to say the least, that the Managing Attorney for the Great Falls Office of the State Public Defender System signed a statement conceding her failure to provide her client with a copy of an expert report

3

developed for a homicide case," especially "considering the fact that Dr. Bennett's report states that it was commissioned by [trial counsel], herself." However, the court found that Dr. Bennett extensively discussed the potentially exonerative information in open court in Haagenson's presence at an April 8, 2010 hearing, and that "Haagenson was, at the very least, impliedly notified of the potentially-exonerative contents of Dr. Bennett's report prior to his change of plea hearing." The court also found that Haagenson had voluntarily signed the motion to dismiss his appeal filed by his appellate counsel, and that his reliance on *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967), was therefore misplaced. The District Court accordingly denied Haagenson's petition. Haagenson timely appealed.

## STANDARD OF REVIEW

¶8 We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *McGarvey v. State*, 2014 MT 189, ¶ 14, __ Mont. __, __ P.3d __ (citation omitted). We review de novo the mixed questions of law and fact presented by claims of IAC. *McGarvey*, ¶ 14 (citation omitted). A petitioner seeking to reverse a district court order denying postconviction relief based on IAC bears a heavy burden. *McGarvey*, ¶ 14 (citation omitted).

## DISCUSSION

¶9 *Did the District Court err in denying Haagenson's petition for postconviction relief?*

¶10 To determine whether a defendant received IAC, we employ the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *McGarvey*, ¶ 24 (citation omitted). "The petitioner must show that counsel's performance fell short of

4

the range of competence required of attorneys in criminal cases and that his counsel's deficient performance was prejudicial to his case." *Taylor v. State*, 2014 MT 142, ¶ 12, __ Mont. __, __ P.3d __ (citation and internal quotation marks omitted). "Under *Strickland*'s first prong, we examine whether counsel's conduct fell below an objective standard of reasonableness considering prevailing professional norms, and in the context of all circumstances." *McGarvey*, ¶ 25 (citation omitted). "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Taylor*, ¶ 12 (citation omitted). Under *Strickland*'s second prong, we examine whether there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Baca v. State*, 2008 MT 371, ¶ 17, 346 Mont. 474, 197 P.3d 948 (citation omitted). To prevail on an IAC claim, the defendant must satisfy both prongs of the *Strickland* test. A court need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Stock v. State*, 2014 MT 46, ¶ 12, 374 Mont. 80, 318 P.3d 1053 (citations omitted).

¶11 As noted, Haagenson entered into his plea agreement with the State on May 17, 2010. This was approximately one month after the date that Dr. Bennett wrote the report in issue. We agree with the District Court that it is "troubling" that trial counsel failed to provide her client with this report before he entered into a plea agreement. We conclude that the failure to provide a report of this significance to her client prior to his entry into a plea agreement constitutes deficient performance, thus satisfying the first *Strickland* prong. We now turn to the question of whether there is a reasonable probability that, but for this deficient performance, the result of the proceeding would have been different.

5

¶12 On April 8, 2010, the District Court convened a hearing on whether the State should be held accountable for turning the victim's body over to his family following the autopsy, but before further examination of the body could be made. Haagenson had requested the hearing, arguing that the State should be held accountable for failing to preserve exculpatory evidence—i.e., the body. While he had not yet prepared his report of April 16, Dr. Bennett was called to testify, and did so at length in the presence of Haagenson.

¶13 Much of the testimony offered by Dr. Bennett on direct and cross-examination was technical in nature. Even though Haagenson was not trained in medical jargon, it should nonetheless have been clear to him from listening to the testimony that Dr. Bennett disagreed with the conclusion of the autopsy report that the victim had died as result of a homicide. Dr. Bennett testified that the autopsy report findings did not support homicide as a manner of death. When asked whether the witness statements supported the autopsy conclusions regarding a homicide, he testified that "the body doesn't lie," and that the witness statements were inconsistent with the autopsy findings on the body.

¶14 In addition to the extensive testimony offered by Dr. Bennett, there was significant discussion during the hearing, including comments by the court, about the fact that Dr. Bennett's contrary opinions would be introduced at trial, and that his opinions would be favorable to Haagenson. In sum, Haagenson should have been able to deduce from the testimony and the discussions in court that Dr. Bennett's opinions called into question whether the victim died of a homicide, and that his opinions would be potentially favorable to him at trial.

¶15 Though we have determined that trial counsel was ineffective for failing to provide the report to her client, we conclude that Haagenson has failed to establish that the outcome of the proceedings would have been different had he been given a copy of the report. We reach this conclusion because Dr. Bennett's April 16, 2010 report summarized the very findings to which he testified at length in Haagenson's presence at the April 8 hearing; thus, Haagenson already possessed the information that would be contained in the April 16 report. Therefore, Haagenson has failed to satisfy *Strickland'*s second prong. Under the circumstances here, there is no reasonable probability that, but for counsel's failure to provide the written report to him, the results of the proceeding (the entry into a plea agreement) would have been different. *Baca*, ¶ 17.

¶16 We next address Haagenson's argument that his appellate counsel was ineffective when he advised Haagenson to withdraw his direct appeal in order to file a petition for postconviction relief. M. R. App. P. 16(4) provides as follows: "Except for an *Anders* motion pursuant to section 46-8-103(2), a party's motion to voluntarily dismiss that party's cause, appeal, or cross-appeal must be signed by both the moving party and that party's counsel." The District Court concluded that because Haagenson signed the motion to voluntarily dismiss, "he ultimately relieved [appellate counsel] of the burden of proof that accompanies an *Anders* brief" and "negate[d] any claims . . . regarding [counsel's] ineffectiveness on appeal in failing to put at issue and argue the circumstances surrounding Haagenson's change of plea and ultimate sentencing." In his affidavit to the court, Haagenson's appellate counsel stated that he had explained the differences between a direct appeal and a postconviction proceeding to Haagenson, that Haagenson informed him he

7

wanted to dismiss his appeal so he could raise his argument in a postconviction proceeding, and that Haagenson signed and filed a motion to voluntarily dismiss his appeal. Nothing in the record indicates that Haagenson filed the motion involuntarily. Thus, we conclude that Haagenson failed to establish deficient performance on the part of his appellate counsel. The District Court did not err in denying Haagenson's petition for postconviction relief as to his claim against his appellate counsel.

**CONCLUSION**

¶17    For the foregoing reasons, we affirm the District Court's denial of Haagenson's petition for postconviction relief.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON