FILED

04/21/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0326

DA 24-0326

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 82

DAVID WAYNE HYSLOP,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV-15-041(B)
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James M. Siegman, Attorney at Law, Jackson, Mississippi

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

          Joshua A. Racki, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: March 18, 2026

Decided: April 21, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      David Wayne Hyslop (Hyslop) appeals from the order of the Eighth Judicial District Court, Cascade County, denying his petition for postconviction relief which was premised primarily on claims of ineffective assistance of counsel.

¶2      We restate the issue on appeal as follows:

> *Whether the District Court erred in denying Hyslop's petition for postconviction relief.*

¶3      We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      In 2012, Hyslop was convicted of felony murder in connection with the death of a two-year old child, October Perez.  He received a 100-year sentence without parole.  In 2015, Hyslop filed a pro se petition for postconviction relief (PCR) alleging various allegations of ineffective assistance of counsel (IAC).  Following an evidentiary hearing in which Hyslop was not represented by counsel, his petition was denied and dismissed.  On appeal, the parties stipulated that Hyslop was entitled to counsel and that the matter be remanded for appointment of such and rehearing.  *See Hyslop v. State*, No. DA 17-0078, Order (Mont. Jun. 19, 2018).  Upon remand, Hyslop was appointed counsel and filed an Amended Petition reasserting his original claims[1] and adding a claim that the State inappropriately failed to produce discovery by refusing to turn over evidence it gathered regarding a drug investigation it was carrying out on the residence where the child died.

---

[1] In the Amended Petition, Hyslop asserted his prior IAC claims and revamped his coercion claim into an IAC claim asserting counsel should have sought to suppress his statements made during a police interview.

2

An evidentiary hearing occurred on March 19, 2024. As Hyslop's trial counsel, Lawrence LaFountain and Vince van der Hagen, had already testified at the prior hearing and had submitted affidavits in 2016, they were not called as witnesses again. Instead, the parties elected to present only argument. At the outset of her argument, Hyslop's counsel asked the District Court to consider the issues raised in the original and amended petitions but advised she intended to present argument "primarily" on three IAC claims which she believed had "the greatest impact on the outcome of the trial"—failure to seek suppression of Hyslop's statements to law enforcement, trial counsel's concession the child's injuries were not accidental, and failure of trial counsel to hire an independent medical expert. Following the hearing, the District Court denied Hyslop's PCR petition concluding his claims were "either procedurally barred in that they could have been raised on direct appeal, are mere conclusory allegations not supported by any facts or evidence or were the subject of competent representation by experienced counsel making tactical decisions in Hyslop's best interests."

¶5     On June 23, 2011, Kristy Perez, upon returning home from work, encountered her child, October Perez, in an unresponsive state and called 911. Paramedics arrived and found the child comatose and she was transported to the nearest emergency room with severe head injuries consistent with nonaccidental trauma. From there, the child was transported to the children's hospital in Salt Lake City where she was deemed to be brain dead. Hyslop was October's primary caretaker while Kristy worked and attended college. That evening, Hyslop was interviewed by Great Falls Police Detectives Otto and Scott.

Before any substantive questions, Hyslop was advised of his *Miranda* rights,[2] agreed to the interview, and signed a waiver. Although Hyslop did not confess to injuring October, he suggested various theories as to how October sustained injury—including prior tripping and falling down the stairs, eating a bad hot dog, and him accidentally dropping her on the floor when trying to put her in her bed. Additional facts will be discussed as necessary to address Hyslop's appeal issues.

**Claims on Appeal.**

¶6     Hyslop appeals from the District Court's denial of his PCR petition asserting in his opening brief the following IAC claims:[3]

1. Trial counsel was ineffective for failing to move to suppress Hyslop's statement to law enforcement.

2. Trial counsel was ineffective by failing to share the medical records with a hired expert.

3. Trial counsel was ineffective for arguing during closing argument that the child's death was not an accident but a result of someone else's actions.

4. Trial counsel was ineffective by failing to allow Hyslop to testify.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[3] It is noted that in Hyslop's initial PCR petition he asserted trial counsel to be ineffective by failing to offer text message evidence for the purpose of impeaching the State's primary witness, Kendall Hyslop, and in his amended PCR petition, he added an IAC claim for failure to pursue the production of discovery related to an ongoing drug investigation regarding methamphetamine use at the house where October was injured. While he notes these claims in his initial briefing in this appeal, he does not specifically raise them as issues and he does not further make argument in support of these claims. As such, we consider these IAC claims to have been waived and do not consider them herein.

5. Trial counsel was ineffective by failing to challenge the State's introduction of other crimes, wrongs, or acts evidence.

6. Trial counsel was ineffective by failing to support a motion for change of venue.

7. Trial counsel was ineffective for failing to call defense witnesses at sentencing.

8. Appellate counsel was ineffective for failing to raise "certain issues on direct appeal[.]"

## STANDARD OF REVIEW

¶7 We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous, and whether its conclusions of law are correct. *Stock v. State*, 2014 MT 46, ¶ 9, 374 Mont. 80, 318 P.3d 1053. Claims of ineffective assistance of counsel are mixed questions of law and fact that are reviewed de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

¶8 Criminal defendants are guaranteed the right to effective counsel under both the United States Constitution and the Montana Constitution. U.S. Const. amend. VI; Mont. Const. art. II, § 24. This Court reviews claims of ineffective assistance of counsel by applying the two-prong test articulated by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052 (1984). *State v. Racz*, 2007 MT 244, ¶ 22, 339 Mont. 218, 168 P.3d 684. Under *Strickland*, a defendant must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense such that the defendant was deprived of a fair trial. *Racz*, ¶ 22. To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy both

5

prongs; "if an insufficient showing is made regarding one prong of the test, there is no need to address the other prong." *Whitlow*, ¶ 11 (citation omitted).

## DISCUSSION

¶9 To establish deficient performance as required under *Strickland*'s first prong, it must be shown that counsel's representation "fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. The errors of counsel must be so serious that counsel ultimately failed to function as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. However, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. A defendant claiming IAC bears a heavy burden in overcoming the presumption that the challenged action might have been a product of sound trial strategy under the circumstances. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Whitlow*, ¶ 21. "It should go without saying that the absence of evidence cannot overcome it." *Dunn v. Reeves*, 594 U.S. 731, 739, 141 S. Ct. 2405, 2410 (2021) (per curiam) (cleaned up).

¶10 In considering whether counsel's performance was deficient, "every effort must be made to 'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time.'" *Whitlow*, ¶ 15 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Tactical decisions that are objectively reasonable should not be second guessed. *See Whitlow*, ¶ 19. "In fact, even if there is reason to think that counsel's conduct was far from exemplary, a

6

court still may not grant relief if the record does not reveal that counsel took an approach that no competent lawyer would have chosen." *Dunn*, 594 U.S. at 739, 141 S. Ct. at 2410 (internal quotation marks omitted).

**Trial counsel was not ineffective for failing to move to suppress Hyslop's statement to law enforcement**.

¶11 Although Hyslop contends his trial attorneys were ineffective for failing to move to suppress his statements to law enforcement, prior to the PCR hearing, he did not argue specific allegations or theory as to the grounds for a suppression motion. At hearing, he developed this argument asserting the interviewing detectives used coercive tactics—lying about their intentions, pressuring him to give "correct" answers, being sympathetic and aggressive (good cop-bad cop), and assuming his guilt. In its denial order, the District Court noted Hyslop relied on *State v. Eskew*, 2017 MT 36, 386 Mont. 324, 390 P.3d 129—a case decided by this Court five years after Hyslop's conviction—broadly asserting the detectives used the same interrogation techniques this Court rejected in *Eskew*. Hyslop asserts the District Court erred in distinguishing this case from *Eskew*, rather than examining this Court's 1979 decision in *State v. Allies*, 186 Mont. 99, 606 P.2d 1043, which provided the precedent for *Eskew*. Hyslop also takes issue with the District Court's determination that by not challenging admission of Hyslop's statements to law enforcement, he was still able to get his version of events—that he loved October like she was his own child, he was concerned about her and praying for her, that she was fine when he put her down for her nap, and he did not injure her—before the jury without having to testify or subject himself to cross-examination. Hyslop asserts that counsel did not need to

make this tactical choice at the expense of bringing a motion to suppress as pursuant to M. R. Evid. 104 any cross-examination of Hyslop regarding a motion to suppress his interrogation would first have been conducted without the jury present.

¶12 The State counters that Hyslop's attorneys exercised reasonable professional judgment when they did not move to suppress Hyslop's statements from his police interview and that Hyslop cannot show prejudice. The State contends objectively reasonable strategic considerations existed for allowing Hyslop to speak through his interview rather than to testify at trial, a suppression motion would not have been meritorious based on his voluntary statements and lack of confession during the interview, and counsel effectively mitigated possible prejudice by cross-examining the detectives about coercion and assumptive questioning in interviewing Hyslop, lessening their credibility.

¶13 As correctly noted by the District Court, to establish trial counsel were ineffective in not pursuing a motion to suppress his interview statements, Hyslop must show such a motion to be arguably meritorious. *State v. Adkins*, 2009 MT 71, ¶ 25, 349 Mont. 444, 204 P. 3d 1. Hyslop asserts in light of *Allies*, which provides the underpinning for *Eskew*, his interview statements were suppressible based on the detectives' coercive interview tactics.

¶14 Confessions are generally admissible, but the "true test of admissibility is that the confession is made freely, voluntarily, and without compulsion[.]" *Allies,* 186 Mont. at 109, 606 P.2d at 1049 (citation omitted). Use of an involuntary confession violates the right against self-incrimination. *Allies*, 186 Mont. at 110, 606 P.2d at 1049. In determining

8

the voluntariness of a confession, the totality of the circumstances must be considered—the defendant's age, education, experience with the criminal justice system, demeanor, articulation, and capacity over his faculties; whether *Miranda* rights were advised; the presence of threats, promises, or lies and deception; and use of psychological coercion—but no single factor controls. *Eskew*, ¶¶ 16-17.

¶15     In *Allies*, during a homicide investigation, the defendant was taken into custody, given *Miranda* warnings, and interrogated. After he was given sodium amytal (widely known as "truth serum"), he confessed to the homicide and provided information regarding the murder weapon. Upon appeal after conviction, this Court reversed and remanded for a new trial on the basis that the defendant's confession was involuntary and the trial court erred in not suppressing his confession and the weapon as fruit of the poisonous tree. *Allies*, 186 Mont. at 118, 606 P.2d at 1053. In *Eskew*, Eskew called 911 to report her six-month-old daughter was unresponsive and not breathing. It was determined that the child had a severe head injury with subdural bleeding. Medical personnel suspected child abuse and advised law enforcement the child's injury resulted from shaking. Shortly after the child arrived at the hospital, law enforcement took Eskew to the police station, placed her in an interrogation room and waited considerable time before interrogating her. Eskew was upset and sobbing, worrying about her daughter's condition. Law enforcement interrogators misled Eskew, telling her that her child could not be adequately treated unless she answered their questions and she was hurting her daughter by not giving them the responses they expected. Interrogators told Eskew they knew what happened and demanded she admit shaking her daughter. This went on for nearly four hours, ending in

9

Eskew ultimately relenting that she had shaken her daughter. Eskew sought suppression of the interrogation, contending her admissions were not voluntary. The district court found the interrogators deliberately lied to Eskew—telling her the interview was necessary to get information to treat her daughter, that her responses could determine whether her child received proper medical treatment, and that she would be reunited with her daughter as soon as the interview was over—when the real purpose of the interview was to obtain admissions that fit the interrogators' pre-determined belief Eskew caused her daughter's injury. Despite this, the district court denied Eskew's suppression motion. Upon appeal, this Court determined the district court erred in concluding the interrogation was not unduly coercive or manipulative and that Eskew was cognizant of her situation. These conclusions were contradicted by the district court's findings the interrogators lied to her about the purpose of the interrogation and about the material elements of her situation. Eskew believed she was providing information to assist doctors in treating her daughter and upon doing so she would be reunited with her daughter. The totality of the circumstances demonstrated her responses during the interrogation were not voluntary. *See Eskew*, ¶¶ 20-28.

¶16    While some of the questioning was similar in fashion to *Eskew*, the totality of the circumstances here are far different than those of either *Allies* or *Eskew*. Hyslop was not drugged to obtain a confession. He offered no evidence that detectives deliberately misrepresented the situation; they appropriately advised him under *Miranda* and he signed a waiver; they did not promise his reunification with October; they did not threaten that she would not receive proper medical treatment without him providing them with their

10

expected responses; and there was no indication he was overly distraught or did not understand the purpose of the interview. Most importantly, Hyslop did not confess during the interview and steadfastly maintained he did not injure October.

¶17     Further, Hyslop's assertion that counsel did not need to make a tactical choice as to how best to present Hyslop's position—through his interview responses or through his direct trial testimony—in considering whether to bring a motion to suppress is not accurate. If Hyslop successfully obtained suppression of his interrogation, it is highly doubtful his version of the event could have been presented to the jury without him testifying at trial and subjecting himself to the rigors of cross-examination.

¶18     Based on the totality of the circumstances, Hyslop has not established a motion to suppress would have been meritorious or if it had been, such would have been likely to change the outcome. Further, he has failed to establish counsel failed to exercise reasonable professional judgment not to pursue a motion to suppress but rather to use his statements made during the subject interview to tell his story without being subjected to testifying under oath subject to cross-examination.

**Trial counsel was not ineffective by failing to share the medical records with a hired expert.**

¶19     Hyslop asserts the District Court erred in holding that defense counsels' failure to hire an independent medical expert was not IAC. Hyslop's attorneys, however, provided evidence they consulted with Dr. Bennett, a forensic pathologist. Hyslop now asserts that although they consulted with Dr. Bennett, the record does not show that counsel provided him with the actual medical records and that to avoid a finding of IAC they should have

11

done so rather than merely consulting with him. The State asserts that although counsel has a duty under *Strickland* to make reasonable investigations or to make reasoned determination that particular investigation is unnecessary, pursuant to *Oliphant v. State*, 2023 MT 43, ¶ 41, 411 Mont. 250, 525 P.3d 12, to establish IAC for failure to hire an expert, Hyslop must do more than speculate that an expert exists or that the expert would testify persuasively in contradiction to the State's evidence. We agree with the State and the District Court.

¶20 Hyslop's counsel consulted with Dr. Bennett to understand the medical testimony from the State and to help craft a defense.[4] Counsels' affidavits and testimony establish they considered alternate theories about the medical evidence but overwhelmingly the evidence showed October died from nonaccidental injuries perpetrated by someone. Given this, counsel made a strategic decision not to pursue hiring of an expert who would potentially testify October's injuries were accidental and instead pursue a defense strategy to place the blame for the injuries on someone other than Hyslop. Hyslop's counsel met their duty to reasonably investigate the medical evidence to determine the most logical mechanism of injury by consulting with Dr. Bennett. Based on their consultation with Dr. Bennett, counsel elected a defense strategy not to counter the mechanism of injury but to instead place blame on someone other than Hyslop. Hyslop has failed to show an

---

[4] Although the record does not specifically show counsel provided Dr. Bennett with the actual medical records, the record also does not specifically show they did not. It seems unlikely that they consulted with Dr. Bennett to better understand the medical testimony and to help craft a defense that could appropriately address the medical evidence without showing Dr. Bennett October's medical records.

alternative medical expert was available to counter the State's medical experts and has likewise failed to show counsel's defense strategy in this regard was not reasonable.

**Trial counsel was not ineffective for arguing during closing argument that the child's death was not an accident but a result of someone else's actions.**

¶21 During his closing argument, Hyslop's trial counsel van der Hagen conceded October's injuries were not accidental. The District Court determined this was not IAC but rather a sound tactical decision that fit with Hyslop's defense that someone other than Hyslop perpetrated October's injury. Hyslop now asserts the District Court's determination would be plausibly justified were the court able to cite to more specific evidence from Hyslop's attorneys "regarding what motive possessed someone other than [Hyslop] to cause the death." The State asserts Hyslop's attorneys exercised reasonable professional judgment in not pursuing an accident defense. This strategy was decided by mid-December 2011 when the State's medical evidence was provided to the defense. Attorney LaFountain determined that based on his research and experience, October's injuries were consistent with child abuse and not something one would normally think of as having been an accident. He believed the medical evidence of nonaccidental injury was very strong and that jurors would not accept her death as a result of accident, especially in light of "the long history of injuries that the child had included missing hair, missing teeth, and a prior spinal fracture." He believed the better defense was that someone else did it. Van der Hagen explained that as Hyslop was at the residence when October became comatose, there was no possible alibi defense but because others were also at the residence, there were alternate suspects with at least similar opportunity as Hyslop to have perpetrated

13

the abuse. As discussed above, Hyslop's counsel did not believe arguing October's injuries were accidental would be credible and doing so could risk him looking more at fault. As noted above, Hyslop has failed to show counsel failed to exercise reasonable professional judgment in pursuing a defense that someone other than Hyslop perpetrated October's catastrophic injury. As such, it was not IAC for van der Hagen to concede on closing that October's injury resulted from child abuse.

**Trial counsel was not ineffective by failing to allow Hyslop to testify**.

¶22     Hyslop asserts the District Court did not correctly consider the laws and the facts in holding Hyslop's attorneys did not commit IAC when they did not have him testify. Although Hyslop acknowledges "it was not an absolute requirement for them to do so," his attorneys could have requested the District Court exclude the jury at the conclusion of the State's case and request the court make inquiry on the record as to whether he was going to testify. The State asserts that in his original PCR petition he complained that his counsel refused to let him testify and that he has now morphed that claim into a claim that his counsel coerced him not to testify and a failure of counsel to establish an on-the-record waiver of his right to testify.

¶23     There is no dispute that after the State rested, Hyslop did not testify and his counsel did not request the court make any inquiry into waiver of his right to testify. To the extent Hyslop asserts IAC of trial counsel for failure to request the court inquire directly of Hyslop regarding waiver of his right to testify, the issue is record-based, could have been asserted as requiring plain error review on direct appeal, and thus is procedurally barred from being

14

raised in this PCR proceeding. Section 46-21-105(2), MCA; *State v. Abel*, 2021 MT 293, ¶ 4, 406 Mont. 250, 498 P.3d 199.

¶24 Hyslop asserts his appellate counsel was ineffective for failing to challenge the waiver of his right to testify. As we noted in *Abel*, "trial courts may infer a knowing, voluntary, and intelligent waiver of the right to testify from the statements and conduct of the defendant and counsel despite a split of authority among federal circuit courts of appeal as to the proper analytical approach for making that inference." *Abel*, ¶ 6. One line of authority indicates courts may "properly infer a knowing, voluntary, and intelligent waiver based solely on a represented defendant's failure to personally object or otherwise assert the right at trial" and the other holds that a defendant's mere silence is insufficient alone "to manifest a knowing, voluntary, and intelligent waiver absent some other record indicia of awareness of the right and his or her voluntary and intelligent adherence or acquiescence to counsel's advice to not testify." *Abel*, ¶ 6. To establish IAC of appellate counsel for failure to challenge the voluntariness of Hyslop's waiver of his right to testify at trial, he must show an arguably meritorious plain error claim that he did not make a knowing, voluntary, or intelligent waiver of his right to testify. Hyslop has made no allegation he did not understand his right to testify, no showing he had insufficient opportunity to discuss this right with counsel, and he has brought forth no showing that his counsel failed to adequately advise him of his right to testify and the potential risks, benefits, and consequences of both testifying and not testifying. He has failed to make any showing that his counsel pressured or applied undue influence to get him not to testify, that his counsel forbade him from testifying, and has utterly failed to show any good faith appellate claim

15

that he did not knowingly, voluntarily, and intelligently waive his right to testify at trial. As such, his appellate counsel was not ineffective for failing to assert this issue on appeal.

**Trial counsel was not ineffective by failing to challenge the State's introduction of other crimes, wrongs, or acts evidence.**

¶25   In his Statement of the Issues, Hyslop questions whether the District Court erred in denying his PCR petition claiming his "trial counsel provided ineffective representation by failing to challenge the State's introduction of other crimes, wrongs, or acts evidence[.]" This statement is patently untrue.  Trial counsel objected to the State admitting evidence of prior injuries sustained by October as potentially being evidence of other bad acts perpetrated by Hyslop.  The District Court denied this objection prior to trial and determined it would permit the State to enter such evidence.

¶26   In his Argument, for the first time, he asserts the error was not that trial counsel failed to challenge the introduction of other crimes, wrongs, or acts evidence but that the District Court erred "in holding that the Appellant's attorneys did not commit ineffective assistance of counsel when they failed to appeal the State's introduction of [Hyslop's] possible prior wrongs."  We have repeatedly held we will not address issues raised for the first time on appeal.  *Griffin v. State*, 2003 MT 267, ¶ 15, 317 Mont. 457, 77 P.3d 545.  As such, we decline to address Hyslop's argument his appellate counsel provided IAC by not appealing the State's introduction of possible prior wrongs.

**Trial counsel was not ineffective by failing to support a motion for change of venue.**

¶27   In his Statement of the Issues, Hyslop asks whether the District Court erred in denying his PCR petition claiming his "trial counsel provided ineffective representation by

16

failing to support a motion to change venue[.]" But in his Argument, he asserts the District Court erred "in holding that the Appellant's attorneys did not commit ineffective assistance of counsel when they failed to appeal the venue where the trial occurred." This is the first time Hyslop raises this issue. We have repeatedly held we will not address issues raised for the first time on appeal. *Griffin*, ¶ 15. As such, we decline to address Hyslop's argument his appellate counsel provided IAC by not appealing denial of his change of venue motion.

**Trial counsel was not ineffective for failing to call defense witnesses at sentencing.**

¶28 Although Hyslop asserts this as an issue in his Statement of the Issues, he makes no argument as to this issue. As such, he has abandoned this claim and we will not review it.

**Appellate counsel was not ineffective for failing to raise "certain issues on direct appeal[.]"**

¶29 In his Statement of the Issues, Hyslop asks whether the District Court erred in denying his PCR petition claiming his "trial counsel provided ineffective representation by failing to raise, or have raised, certain issues on direct appeal[.]" But in his Argument, he asserts appellant counsel's failure "to raise his first six assignments of error on direct appeal still provides grounds for postconviction relief."

¶30 As discussed above, Hyslop has failed to establish any IAC on the part of his trial counsel regarding not bringing a motion for suppression, conceding October's injuries were not accidental, and his not testifying at trial. As such, it would have been futile to raise these issues on appeal. As discussed above, Hyslop did not previously raise IAC

17

claims regarding appellate counsel in relation to pursuing a change of venue and we decline to further address it.

¶31 Finally, Hyslop asserts appellate counsel was ineffective for failing to appeal the District Court's ruling permitting the State to enter evidence of injuries to October occurring prior to the immediate events resulting in her death. The affidavit of appellate counsel indicates that he did consider raising this issue on appeal, but believed that even if it was determined to be error, he believed it to be harmless error in light of all the evidence presented of the immediate events resulting in October's death. He believed there to be a more compelling appeal issue related to the felony murder rule and determined appeal should be limited to that issue. This was a tactical determination which Hyslop has not shown to be outside the objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances.

## CONCLUSION

¶32 Hyslop has failed to establish, pursuant to *Strickland*, that trial or appellate counsel's representation was deficient. We therefore affirm.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER