CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Steven Scott Tower appeals from his conviction, in a jury trial in the Fourth Judicial District Court, Missoula Comity, of criminal sale of dangerous drugs. We affirm.
The issues are:
1. Whether the State was required to set forth a theory of accountability in the information in order to satisfy the legislature’s purpose in enacting criminal statutes.
2. Whether Tower was given sufficient notice of the charged offense to satisfy the requirements of due process.
3. Whether there was sufficient evidence presented at trial to convict Tower of the criminal sale of dangerous drugs.
During the summer of 1992, Steven Tower, Tron Skarland, and Tim Richardson lived together at a house on Mount Street in Missoula, Montana. Tower’s grandparents owned the house.
A confidential informant told local authorities that illegal drug activities were occurring at the house. The local authorities contacted the State of Montana Criminal Investigation Bureau (CIB) for assis *65 tance in providing an undercover officer to attempt to purchase illegal drugs from the residence.
CIB agent Mark Long, posing as a citizen of Butte, Montana, became acquainted with the residents of the Mount Street house. He and Skarland met on three occasions in August and September of 1992, and Long made three purchases of marijuana from Skarland at the house.
On September 16, 1992, Long went to the Mount Street house to make another, larger, marijuana purchase. Tower and Richardson invited Long in to wait for Skarland’s return. When Long told Tower and Richardson he wanted to do some business, they said, “Okay, how much?” Agent Long replied that he wanted four times more than what he had purchased before, and Tower nodded his head and said, “Okay, okay.” Agent Long left the house without buying any marijuana that evening.
The next evening, Agent Long, wearing a body wire, again went to the Mount Street house. Once again, Skarland was not home, but Richardson, Tower, and six or seven other people were there. When Skarland did not return after about twenty minutes, Long told Tower that he was going to go to the Town & Country Lounge. He asked Tower to tell Skarland to meet him there, and Tower agreed to do so.
Approximately one hour later, Tower and Skarland approached Long in the parking lot of the Town & Country Lounge. Skarland was driving a pickup truck and Tower was seated in the passenger’s seat. Long testified that he went to the passenger side of the vehicle and said he wanted to buy a quarter-pound of marijuana. Skarland replied that would be no problem, produced a plastic baggie containing about an ounce of marijuana, and said something to the effect of “This is the quality you’ll be getting.” After Long agreed the quality was acceptable, he and Skarland negotiated a price of $700. Long testified that, during the negotiations, Tower passed the sample from Skarland to Long. Long further testified that, while he was counting out the money, Tower explained that they were late because he had forgotten to give Skarland the message that Long was waiting at the Town & Country Lounge. Long gave the money to Tower and told him to count it. When Tower announced it was only $650, Long gave him another $50.
Long testified that Skarland and Tower both said they needed to go somewhere to pick up the marijuana for him. They agreed to meet at Ole’s convenience store a half-hour later for delivery of the marijuana. Long testified that both Skarland and Tower gave him direc *66 tions to Ole’s. Prior to meeting Long at Ole’s, Skarland and Tower, under surveillance, drove from the Town & Country Lounge to a Toole Avenue house, which they entered briefly. When they exited the house, the person who got into the passenger seat of the truck was observed to be carrying a package.
When Skarland and Tower arrived at Ole’s, minutes later, Tower got out of the passenger seat of the truck and went into the store. Long got into the truck and Skarland gave him a duffel bag. In the duffel bag was a baggie containing four ounces of marijuana. Both Skarland and Tower were subsequently arrested.
At trial, the jury heard an audio tape of the September 17 conversations between Long, Skarland, and Tower. Over Tower’s objection, the court instructed the jury about accountability for a crime under §§ 45-2-301 and -302, MCA. The jury found Tower guilty of criminal sale of dangerous drugs.
Issue 1
Was the State required to set forth a theory of accountability in the information in order to satisfy the legislature’s purpose in enacting criminal statutes?
One purpose of the Montana legislature in enacting criminal statutes is “to give fair warning of the nature of the conduct declared to constitute an offense.” Section 45-l-102(c), MCA. This statement of purpose was adopted from an Illinois statute, as part of the 1973 general revision of criminal law in Montana. Tower contends that to fulfill this purpose, when the State’s case against a criminal defendant is based upon the accountability statutes, the State must give the defendant notice of that fact in the information filed against the defendant.
Montana’s accountability statutes are also patterned after Illinois law. Section 45-2-301, MCA, provides:
Accountability for conduct of another. Aperson is responsible for conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for such conduct as provided in 45-2-302, or both.
Section 45-2-302, MCA, defines the circumstances under which such accountability may exist. It provides in part that a person is legally accountable for the conduct of another when:
(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, *67 abets, agrees, or attempts to aid such other person in the planning or commission of the offense.
When Montana’s legislature adopts a statute from a sister state, Montana courts follow the general rule of also adopting the construction which has been placed upon that statute by the highest court of the sister state. Dew v. Dower (1993), 258 Mont. 114, 125-26, 852 P.2d 549, 556; State v. Murphy (1977), 174 Mont. 307, 311, 570 P.2d 1103, 1105. In State v. Oppelt (1978), 176 Mont. 499, 580 P.2d 110, and in Murphy, 570 P.2d at 1105, this Court noted that the accountability statutes borrowed from Illinois had not been interpreted to require the theory of accountability to be included in the charging document.
This rule is consistent with the previous law of accountability in Montana. State v. Zadick (1966), 148 Mont. 296, 300, 419 P.2d 749, 751. “[N]o other facts need be alleged in any indictment or information against ... an accessory, than are required in an indictment or information against his principal.” Section 94-6423, RCM (1947). The Criminal Law Commission comments to § 45-2-302, MCA, state that the statute “accepts the approach of the existing law and endeavors to develop it in full and systematic fashion.”
We hold that the State was not required, under the purpose stated at § 45-l-102(c), MCA, to set forth a theory of accountability in the information.
Issue 2
Was Tower given sufficient notice of the charged offense to satisfy the requirements of due process?
Tower cites the general rule that due process requires that a person charged with an offense must be duly advised of the nature and cause of the accusation against him. See Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. He asserts that due process requires that the information against him should have included language from the accountability statutes.
Under the Model Penal Code and subsequent recodifications of criminal law in a majority of states, a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime; distinctions between what used to be referred to as the “principal” and “accessory before the fact” have largely been abandoned. See 2 W. LaFave and A. Scott, Jr., Substantive Criminal Law § 6.6 (1986). Criminal accountability is not considered a substantive separate offense, but merely a conduit *68 by which to find a person criminally liable for the acts of another. Matter of B.D.C. (1984), 211 Mont. 216, 220-21, 687 P.2d 655, 657.
A charging document must give a
plain, concise, and definite statement of the offense charged, including the name of the offense, whether the offense is a misdemeanor or felony, the name of the person charged, and the time and place of the offense as definitely as can be determined. The charge must state for each count the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.
Section 46-11-401(1), MCA. In this case, the information alleged that Tower “purposefully or knowingly sold a dangerous drug as defined in Section 50-32-101, MCA, marijuana, to Mark Long.”
Additionally, Tower’s claim that he was surprised by the accountability instruction is simply not persuasive. Prior to trial, Tower and his counsel were provided with the audio tape, access to the materials in the State’s case file, and the opportunity to interview the State’s witnesses. The opening statement of the State at trial clearly outlined the evidence which the State intended to present. In light of the defense’s knowledge of the State’s case, and the consistent history of the law of accountability in Montana, there was every reason to anticipate an accountability instruction.
We conclude that Tower was given fair warning of the nature and cause of the accusation against him, and of the conduct declared to constitute an offense. Because accountability is not a separate offense, we hold that due process did not require that the State set forth a theory of accountability in the information.
Issue 3
Was sufficient evidence presented at trial to convict Tower of the criminal sale of dangerous drugs?
Skarland testified in Tower’s behalf at trial. His testimony minimized Tower’s involvement in the sale of the marijuana. Tower claims he had no active role in the marijuana sale and that he was simply in the wrong place at the wrong time.
In reviewing the sufficiency of the evidence to support a jury verdict of conviction in a criminal case, our standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. McLain (1991), 249 Mont. 242, 246, 815 P.2d 147, 150. Viewing the evidence *69 in this case in the light most favorable to the prosecution, it showed that Tower gave Skarland the message to meet Agent Long, and that he clearly understood the purpose of their meeting to be a sale of marijuana. Tower then accompanied Skarland to the meeting, passed the marijuana sample from Skarland to Long, and counted the money Long paid for the marijuana. He gave Long directions to the meeting place for the delivery of the marijuana. He went with Skarland to pick up the marijuana and carried the package apparently containing the marijuana from the house to the truck. He then accompanied Skarland to deliver the marijuana. We conclude that a rational trier of fact could have found Tower guilty, beyond a reasonable doubt, of the criminal sale of dangerous drugs.
We therefore affirm the decision of the jury and of the District Court.
JUSTICES HARRISON and WEBER concur.