FILED

10/18/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0479

DA 15-0479

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 261

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

ROBERT LAWRENCE DOBROWSKI,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC-2013-62
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Penelope S. Strong, Attorney at Law, Billings, Montana

     For Appellee:

         Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

         Wyatt A. Glade, Custer County Attorney, Miles City, Montana

Submitted on Briefs:  August 24, 2016

Decided:  October 18, 2016

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Judge Michael Hayworth of the Sixteenth Judicial District Court, Custer County, presided over the trial of Robert Lawrence Dobrowski (Dobrowski) for criminal production or manufacture of dangerous drugs.  The jury returned a verdict of guilty. Dobrowski appeals, alleging numerous errors at trial.

¶2     We address the following issues on appeal:

*Issue one:  Did the District Court abuse its discretion in instructing the jury on the theory of accountability when the State did not charge Dobrowski with accountability in the Information?*

*Issue two:  Did the District Court abuse its discretion when it allowed the State to admit Dobrowski's medical marijuana provider application?*

*Issue three: Did the prosecutor's statements during closing argument constitute prosecutorial misconduct?*

*Issue four: Did the District Court err when it denied Dobrowski's request for a surrebuttal closing argument?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     In the fall of 2012, Dobrowski and his wife Traci Dobrowski (Traci) lived on property located in Custer County, Montana, owned by Michael Burk (Burk) and Geraldine Burk (Geraldine).  Dobrowski, Burk, Traci, and Geraldine each had medical marijuana patient cards issued to them by the Department of Public Health and Human Services (DPHHS), which allowed each individual to possess four mature plants, twelve submature plants, and one ounce of usable marijuana.  Burk and Dobrowski began growing marijuana on the property.  Dobrowski and Traci moved to Miles City, Montana, in December of 2012.  In February 2013, Dobrowski applied for a medical marijuana

provider license, listing Burk's property as the address where he would grow marijuana. His application was later denied.

¶4 On March 14, 2013, law enforcement officers executed a search warrant on Burk's property after a criminal investigation discovered evidence consistent with a marijuana cultivation operation. Officers discovered 66 mature plants and 22 submature plants. Officers spoke to Dobrowski after the search. He acknowledged that he had been growing marijuana on the property and helped to set up the building where the marijuana was found. On December 5, 2013, the State filed an Information charging Dobrowski with criminal production or manufacture of dangerous drugs. A jury convicted Dobrowski on February 27, 2016.

¶5 Other facts will be noted as necessary to discuss the issues raised on appeal.

## STANDARDS OF REVIEW

¶6 We review a district court's decision regarding jury instructions for an abuse of discretion. *State v. Lacey*, 2012 MT 52, ¶ 15, 364 Mont. 291, 272 P.3d 1288. "The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. Dunfee*, 2005 MT 147, ¶ 20, 327 Mont. 335, 114 P.3d 217.

¶7 "District courts are vested with broad discretion in controlling the admission of evidence at trial." *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561. We review a district court's admission of rebuttal evidence for abuse of discretion. *State v. Weitzel*, 2000 MT 86, ¶¶ 23-24, 299 Mont. 192, 998 P.2d 1154.

3

¶8 We review allegations of prosecutorial error de novo, considering the prosecutor's conduct in the context of the entire proceeding. *State v. Labbe*, 2012 MT 76, ¶ 11, 364 Mont. 415, 276 P.3d 848 (closing argument). We consider closing argument statements in the context of the entire argument and review a district court's rulings on objections to closing argument content for an abuse of discretion. *State v. Chafee*, 2014 MT 226, ¶ 12 376 Mont. 267, 332 P.3d 240.

¶9 We review a district court's application of a statute for correctness. *State v. Alden*, 282 Mont. 45, 49, 934 P.2d 210, 213 (1997).

## DISCUSSION

¶10 *Issue one: Did the District Court abuse its discretion in instructing the jury on the theory of accountability when the State did not charge Dobrowski with accountability in the Information?*

¶11 The State's information filed against Dobrowski did not include an accountability charge. Rather, the State sought jury instructions on the theory of accountability on the second day of trial. The District Court admitted two instructions on accountability over Dobrowski's objection. Dobrowski now asks us to revisit our prior case law, namely *State v. Tellegen*, 2013 MT 337, 372 Mont. 454, 314 P.3d 902 and *State v. Tower*, 267 Mont. 63, 881 P.2d 1317 (1994), arguing that the allowance of the accountability instruction violated Dobrowski's right to due process and his right to present a defense.

¶12 Under the Sixth Amendment, a criminal defendant has the right "to be informed of the nature and cause of the accusation" brought against him. U.S. Const. amend. VI. To this end, § 46-11-401(1), MCA, requires charging documents to state the name of the

4

offense and, for each count, to state "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

¶13 Section 45-2-302, MCA, provides, in relevant part:

A person is legally accountable for the conduct of another when:

. . .

(3) either before or during the commission of an offense with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the offense.

We have repeatedly held that "accountability is not a separate or different offense from the one charged, but rather, is 'merely a conduit by which to find a person criminally liable for the acts of another.'" *Tellegen*, ¶ 9 (quoting *State v. Maetche*, 2008 MT 184, ¶ 16, 343 Mont. 464, 185 P.3d 980; *State v. Abe*, 1998 MT 206, ¶ 31, 290 Mont. 393, 965 P.2d 882; *Tower*, 267 Mont. at 67-68, 881 P.2d at 1320). *Stare decisis* "is of fundamental and central importance to the rule of law," which "reflects our concerns for stability, predictability, and equal treatment." *State v. Gatts*, 279 Mont. 42, 51, 928 P.2d 114, 119 (1996). As such, we decline to reconsider our prior holdings in *Tower* and *Tellegen*. Given our well-established principle of law regarding the theory of accountability, a defendant should be able to predict and plan for the possibility that the State may request an accountability instruction during trial. *Tellegen*, ¶ 9 (citing *Tower*, 267 Mont. at 68, 881 P.2d at 1320).

¶14 In *Tower*, we found unpersuasive a defendant's claim that he was surprised by an accountability instruction given that he was provided all the evidence the State intended to present at trial. *Tower*, 267 Mont. at 68, 881 P.2d at 1320. We concluded that "[i]n

light of the defense's knowledge of the State's case, and the consistent history of the law of accountability in Montana, there was every reason to anticipate an accountability instruction." *Tower*, 267 Mont. at 68, 881 P.2d at 1320. Likewise, in *Tellegen*, we held that a defendant had sufficient notice of a possible accountability instruction when the State presented evidence at trial that she assisted others in committing the crime for which she was charged. *Tellegen*, ¶¶ 9-10.

¶15 The facts in this case are similar to the facts in *Tower* and *Tellegen*. One week after the search of Burk's property, Dobrowski admitted to officers that he was cooperatively growing marijuana on the property and helped to set up one of the buildings where the plants were found. The State then charged Dobrowski with criminal production or manufacture of dangerous drugs. During trial, the prosecution elicited testimony from Dobrowski that sought to establish his participation in the growing operation on Burk's property. Dobrowski testified that he previously taught Burk to grow marijuana and told officers that he and Burk had a cooperative grow on the property. In short, Dobrowski was charged for his participation in the growing operation, and Dobrowski himself testified that he was involved in the operation. The facts underlying Dobrowski's case and the State's presentation of evidence at trial, which sought to establish that he did not act alone in growing marijuana on Burk's property, put him on notice that the State could potentially request an accountability jury instruction.

¶16 Dobrowski attempts to rely on *State v. Spotted Eagle*, 2010 MT 222, 358 Mont. 22, 243 P.3d 402. In *Spotted Eagle*, the State initially charged the defendant under § 45-5-206(1)(a), MCA, then later sought to instruct the jury under § 45-5-206(1)(c),

6

MCA. *Spotted Eagle*, ¶ 11. Since this changed the essential elements of the charge against Spotted Eagle, the Court held that the district court abused its discretion in allowing an instruction on the separate and distinct offense not charged in the State's information. *Spotted Eagle*, ¶¶ 11-12, 16. As in this case, the defendant in *Tellegen* also attempted to rely on *Spotted Eagle* to contend that, like the statutory subsections in that case, the statute on accountability is a separate and distinct offense requiring express notice from the prosecution. *Tellegen*, ¶¶ 13-14. However, we distinguished *Spotted Eagle* from Montana's case law on accountability, holding that "[a]ccountability is not a separate or different offense from the one charged, it is merely a theory to establish criminal liability for the charged offense" and "does not constitute a substantive shift in the charge." *Tellegen*, ¶ 14. Thus, as we previously held in *Tellegen*, *Spotted Eagle* does not apply to the case at bar. We conclude that the District Court did not abuse its discretion in instructing the jury on the theory of accountability.

¶17　*Issue two: Did the District Court abuse its discretion when it allowed the State to admit Dobrowski's medical marijuana provider application?*

¶18　On the first day of trial, the State learned that Dobrowski intended to offer into evidence various letters between DPHHS and Dobrowski, Burk, Traci, and Geraldine. The District Court allowed Dobrowski to introduce this correspondence through the testimony of a DPHHS employee. The State then asked the court to issue an investigative subpoena for Dobrowski's medical marijuana provider application. Dobrowski objected to the State's motion, claiming that it was untimely. The court issued the investigative subpoena, concluding that the State had a compelling state

7

interest in obtaining the application, but that it could only be used on rebuttal. During trial, both Dobrowski's counsel and the State questioned the defendant about his application and it was subsequently admitted during the State's rebuttal.

¶19 For the first time on appeal, Dobrowski argues that the court erred in approving the State's motion for investigative subpoena without requiring a supporting affidavit by the prosecutor, as mandated by § 46-4-301, MCA. However, "[i]t is well established that this Court will not review an issue that was not raised in the district court." *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 37, 321 Mont. 364, 91 P.3d 569. Dobrowski did not ask for relief from the improper issuance of an investigative subpoena in the trial court. *See* § 46-4-303, MCA. Thus, we will not put the District Court in error for an issue it never had the opportunity to consider. *Paulson*, ¶ 37.

¶20 Dobrowski also argues that the District Court abused its discretion in allowing the State to admit Dobrowski's medical marijuana provider application during rebuttal. He argues that because the State failed to disclose the document in a timely manner, the court's subsequent admission of the application during rebuttal sanctioned the use of a prejudicial, dilatory tactic by the prosecution.

¶21 Section 46-15-322, MCA, provides, in relevant part:

> (1) Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control:
>
> .   .   .
>
> (d) all papers, documents, photographs, or tangible objects that the prosecutor may use at trial or that were obtained from or purportedly belong to the defendant . . . .

8

"The policy behind § 46-15-322, MCA, is to provide notice and prevent surprise." *State v. Stewart*, 2000 MT 379, ¶ 22, 303 Mont. 507, 16 P.3d 391. Prosecutors also have a continuing duty to disclose "additional information or material that would be subject to disclosure had it been known at the time of disclosure." Section 46-15-327, MCA.

¶22 In this case, Dobrowski's medical marijuana provider application was not in the State's possession or control until the District Court approved the motion for investigative subpoena during trial. Furthermore, when DPHHS provided the State with Dobrowski's application, the State immediately gave the document to the defense. From these facts, it is evident that the State provided the application to Dobrowski at the "earliest opportunity." *See Weitzel*, ¶ 33. Thus, we cannot say that the State failed to meets its initial or continuing duty to disclose Dobrowski's provider application when the prosecutor was not in possession or control of the document before the subpoena was issued, and when the State gave Dobrowski a copy of the application upon possession of the document.

¶23 While Dobrowski attempts to rely on *Stewart* to support his argument that the District Court abused its discretion when it permitted the State to introduce the provider application in rebuttal, we instead find our holding in *Weitzel* more on point and dispositive. In *Weitzel*, we held that the district court did not abuse its discretion in allowing rebuttal evidence showing the defendant had pawned a handgun where the defendant's trial testimony included statements denying gun ownership. *Weitzel*, ¶¶ 35, 38. This Court concluded that because Weitzel did not provide the State with pre-trial notice of his plan to suggest to the jury that he did own or possess an handgun, it was

9

"illogical" to hold that the prosecution had a pre-trial duty to disclose the pawn shop record rebuttal evidence, even where the State had discovered the pawn shop transaction before trial. *Weitzel*, ¶¶ 31, 33.

¶24 In this case, we agree with the State that it was entitled to question Dobrowski about the provider application and admit the document in the State's rebuttal case. Like the facts in *Weitzel*, the record here shows that Dobrowski belatedly disclosed evidence, in the form of various letters between the DPHHS and Dobrowski, Burke, Traci, and Geraldine, which he admitted through the testimony of a DPHHS employee. Although it is unclear what tactical reason Dobrowski had in introducing these documents, he made a decision to open the door on the issue of his provider application without disclosing the application itself. *See Weitzel*, ¶ 35. As such, the State was entitled to present what became, through Dobrowski's own making, relevant evidence of Dobrowski's complete correspondence with DPHHS. Given Dobrowski's testimony and the admission of the DPHHS letters by him, we conclude that the District Court did not abuse its discretion in allowing the State to admit Dobrowski's medical marijuana provider application during rebuttal.

¶25 *Issue three: Did the prosecutor's statements during closing argument constitute prosecutorial misconduct?*

¶26 Dobrowski claims that two statements made during the prosecution's closing argument were improper. In the first statement, the prosecutor attempted to draw an analogy between a recent accident of his and the case at bar. He stated:

> Well, I got rid of my crutches. I like to think that my case is like my foot, just keeps getting better. . . .

10

. . .

> [I] was trying to figure out a way to present to you my theory on this case, and I had several thoughts go through my mind. I mentioned in opening, I think these two gentlemen got the cart before the horse. I got to thinking what happened here is a lot like what happened to me when I hurt my foot. What happened to me…

Dobrowski's counsel objected to the prosecutor's statement, arguing that the prosecutor was vouching for the credibility of a witness. The District Court sustained the objection.

¶27 The prosecutor then began to address a juror's concern, expressed in voir dire, that Dobrowski might serve a long sentence if convicted. He stated:

> I want to tell you that sentencing is a matter of law for the [j]udge. Finding guilt or innocence is a matter of fact for the jury. Sentencing, consequences, they may be very substantial. They may be minimal. Depends on who you ask. It's not an issue that the jury should consider or can consider. That's a legal issue.
>
> The only issue the jury should consider is whether the [d]efendant is guilty of the crime charged. He's entitled to a fair hearing, if we do go to sentencing. He's got some due process rights that apply if he feels he wasn't treated fairly.

Dobrowski's counsel objected to this statement and the court directed the prosecution to "move on." The defense moved for a mistrial after the State concluded its closing statement, citing the prosecution's alleged vouching statement, referral to evidence outside the record, and reference to sentencing procedure. The court denied the motion.

¶28 Prosecutorial misconduct is determined by reference to established norms of professional conduct. *State v. Martin*, 2001 MT 83, ¶ 63, 305 Mont. 123, 23 P.3d 216. To determine whether a prosecutor's statement constitutes reversible error, we must first examine whether the comments were improper. *Labbe*, ¶ 23 (citing *State v. Kolb*, 2009 MT 9, ¶ 10, 349 Mont. 10, 200 P.3d 504; *State v. Sanchez*, 2008 MT 27, ¶ 51, 341 Mont.

11

240, 177 P.3d 444). "If so, we then determine whether the comments prejudiced the defendant's right to a fair and impartial trial." *Labbe*, ¶ 23 (citing *Kolb*, ¶ 10). Prejudice is not inferred; rather, the defendant "must demonstrate, from the record, that the prosecutor's misstatements prejudiced him." *Sanchez*, ¶ 55. This Court will consider an alleged improper statement by the prosecutor during closing argument in the context of the entire argument. *Labbe*, ¶ 23 (citing *State v. Roubideaux*, 2005 MT 324, ¶ 15, 329 Mont. 521, 124 P.3d 1114).

¶29 As to the first statement concerning the prosecutor's purported attempt to analogize his accident with this case, Dobrowski does not argue on appeal, as he did at trial, that the comments improperly vouched for the credibility of a witness. Rather, he only argues that the prosecutor's statement "was a very clearly prohibited reference to facts outside the trial record," in contravention of the Montana Rules of Professional Conduct 3.4(e). We cannot say that the prosecutor's first statement was improper on this basis. The Montana Rules of Professional Conduct prohibit an attorney from alluding to irrelevant matters or "assert[ing] personal knowledge of facts in issue except when testifying as a witness." Mont. R. Prof. Cond. 3.4(e). Here, when the prosecutor stated "my case is like my foot, just keeps getting better," he was simply commenting on the strength of his case by attempting to draw an analogy to his injury. It is not improper for a prosecutor to comment upon the strength of his case based upon the evidence. *See State v. Glaudue*, 1999 MT 1, ¶ 21, 293 Mont. 1, 972 P.2d 827.

¶30 On the other hand, it is well-settled law in Montana that "closing arguments which reflect a prosecutor's personal opinion as to the guilt of the defendant are improper."

12

*Glaudue*, ¶ 22 (citing *State v. Statczar*, 228 Mont. 446, 457, 743 P.2d 606, 613 (1987)). However, the prosecutor's statement that Dobrowski and Burk "got the cart before the horse" was simply a way for the prosecution to explain its theory of the case; namely, that Dobrowski helped Burk grow marijuana in excess of the amount allowed by law without getting a provider license which would have allowed him to do so legally. Thus, we cannot conclude that the prosecutor made an improper statement of his personal opinion regarding Dobrowski's guilt.

¶31 Dobrowski also contends that the prosecutor's second statement concerning sentencing was improper and prejudicial. The State argues that the prosecutor correctly informed the jury that sentencing matters are decided by the court and, unlike the case law relied upon by Dobrowski, did not specifically discuss the type of sentence the defendant might receive if convicted. We have held that it is improper for the prosecutor to inform the jury about possible sentences in closing argument. *Martin*, ¶ 65. In this case, the prosecutor was responding to a juror's previously stated concern over the possible sentencing consequences for Dobrowski. The prosecutor replied by accurately stating that sentencing decisions are solely the duty of the trial court and outside the province of the jury. The prosecutor also referred to the fact that sentences vary widely and the defendant would have rights "if we do go to sentencing." Such general statements are unlike those in *Stewart*, where the prosecutor attempted to assure the jury by stating that the judge had the authority to get the defendant into treatment and not sentence him to jail time. *Stewart*, ¶ 43. Unlike *Stewart*, the prosecution in this case was not attempting to give assurance to the jury that Dobrowski's sentence would be light;

13

rather, the prosecutor was informing the jurors that it was impermissible for them to weigh potential punishment because such matters are left to judge and subject to the defendant's constitutional rights. Thus, we cannot say that this statement was improper or that the District Court erred in denying Dobrowski's motion for a mistrial.

¶32 Since we have determined that the prosecutor's statements were not improper, there is no need to discuss whether Dobrowski was prejudiced by the statement.

¶33 *Issue four: Did the District Court err when it denied Dobrowski's request for a surrebuttal closing argument?*

¶34 Prior to trial, Dobrowski filed a motion *in limine* requesting a departure from the customary order of trial; specifically, he asked to be allowed to present a surrebuttal closing argument. The District Court denied Dobrowski's motion, characterizing it instead as a motion to deviate from the statutory order of trial and finding it untimely. Dobrowski argues that the District Court erred in denying his motion because he demonstrated good cause to depart from the order of trial and was thus entitled to present a surrebuttal argument at closing. The State contends that no rule or statute requires a district court to grant a defendant's request for a surrebuttal argument.

¶35 Section 46-16-402, MCA, allows a court to deviate from the order of trial "[f]or good cause shown and in the discretion of the court." *See State v. Otto*, 2014 MT 20, ¶ 11, 373 Mont. 385, 317 P.3d 810. While § 46-14-401(3), MCA, allows the prosecution and defense to offer rebutting testimonial evidence "at any time before the close of evidence," the decision to allow a surrebuttal closing argument is within the discretion of the trial court. The cases Dobrowski cites in support of his argument to the contrary are

14

either irrelevant or inapplicable to the case at bar and we decline to address them. Because the District Court found Dobrowski's motion to deviate from the statutory order of trial untimely under its pre-trial omnibus order, and because the court found that Dobrowski presented no basis under Montana law to deviate from the trial order, we conclude that the District Court acted within the proper bounds of its discretion when it denied Dobrowski's request to present a surrebuttal argument at closing.

## CONCLUSION

¶36 For the foregoing reasons, we affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE

15