FILED

08/22/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0631

DA 15-0631

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 203

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

SCOTT ALAN LEHRKAMP,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis And Clark, Cause No. CDC 14-393
                  Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Deborah S. Smith, Assistant
            Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
            Attorney General, Helena, Montana

            Leo J. Gallagher, Lewis & Clark County Attorney, Jeff Sealey, Deputy
            County Attorney, Helena, Montana

Submitted on Briefs:  June 28, 2017

Decided:  August 22, 2017

Filed:

                                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    A Lewis and Clark County jury convicted Scott Alan Lehrkamp of felony possession of dangerous drugs.  At sentencing, the State introduced recordings of telephone conversations in which Lehrkamp threatened physical violence against his public defender and the prosecutor.  The prosecutor recommended a sentence of twenty years in prison with ten years suspended, stating that such a sentence would give him and his family "solace."  The District Court sentenced Lehrkamp to ten years in prison and included a number of conditions in the written judgment.  Lehrkamp appeals.

¶2    We restate the issues as follows:

1. *Whether Lehrkamp is entitled to a new sentencing hearing because the prosecutor's remarks amount to plain error;*

2. *Whether Lehrkamp received ineffective assistance of counsel at the sentencing hearing;*

3. *Whether the District Court imposed an unlawful sentence by misapplying the persistent felony offender statute;*

4. *Whether certain terms of the District Court's written judgment should be stricken for conflicting with the oral pronouncement of sentence.*

¶3    We affirm on Issues 1, 2, and 3, and affirm in part and reverse in part on Issue 4.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4    Lehrkamp was arrested in October 2014 for a probation violation.  A subsequent jail search uncovered two hydrocodone pills in his pocket.  The State charged Lehrkamp with felony criminal possession of dangerous drugs, in violation of § 45-9-102, MCA.  The State filed a notice of intent to seek persistent felony offender (PFO) status under § 46-18-502(2), MCA, based on Lehrkamp's previous convictions in 2008 for felony

2

criminal endangerment and in 2014 for felony assault with a weapon. A Lewis and Clark County jury found Lehrkamp guilty in June 2015. Lehrkamp does not appeal the verdict.

¶5 At Lehrkamp's August 2015 sentencing hearing, the State introduced excerpts of recorded telephone conversations Lehrkamp had with his family while he was in jail. The conversations had occurred in the two days leading up to trial and on the day of trial. In the recordings, Lehrkamp discussed his thoughts about attacking his then-counsel, Mariah Eastman, and the prosecutor, Jeff Sealey, when they all were in the courtroom together. He stated:

> That's what I figure, punch the fuck'n bitch right in the throat. Won't let me fire her in two different courts. Won't let me fuck'n get rid of her through her boss or nobody else. Just look at her, smile, and punch her right in the throat, watch her drop. There you go, guilty. Then go after the prosecutor. After a year in here Pa I really don't give a fuck what happens.
>
> . . .
>
> He's a fuck'n cheap piece of shit, he's a vindictive little cock sucker. Yah, I'm gonna fuck'n jump his ass in the goddam court room. Yah, I'm gonna fuck'n beat his ass until he doesn't fuck'n breath, right there . . . I don't care if they hear me. They better have a fuck'n cop in between us the whole goddam time because I'm gonna break his fuck'n neck. I spent a fuck'n year in this dump. Best thing they can do is shoot my ass.
>
> . . .
>
> I said, "Well I hope he's listening to the conversations because he better be fuck'n on edge tomorrow and there better be a cop between me and him." And she's like, "Well why then?" And I said, "Because I'm gonna fuck'n break his neck." I said, "Win or lose I don't give a shit. I'm goddam gonna fuck'n smash the piss out of that little fuck'n weasel." And she's like, "Oh, I can't believe you said that." And I said, "Well you know when you're being fuck'n accused of shit I didn't do, I gonna fuck'n, I'm gonna drain his life out of him in the court room and look at the judge and you and say guilty, there, now I'm guilty."

3

¶6   The State recommended a sentence of twenty years in prison with ten years suspended. In explaining the State's recommendation, the prosecutor told the court:

> I've actually been thinking about this for a while. Short of you letting me dispatch Mr. Lehrkamp in a permanent sort of way, which is my natural inclination after listening to that audio, and I know we can't do that, I think he does need to be on supervision after a minimum of 10 years in prison.
>
> So I would ask that you impose a sentence of 20 years to the Montana State Prison and suspend 10 of those years. I would ask you to run that consecutive to the sentence in [Lehrkamp's 2014 assault case]. That's basically the minimum prison time with a 10-year period of supervision afterwards.
>
> That will give myself and my family some solace that someone will be watching Mr. Lehrkamp for a very long time after he gets out of prison. So that's my recommendation.

Lehrkamp's counsel did not object to the introduction of the recorded conversations or to the prosecutor's remarks.

¶7   Lehrkamp presented no witnesses at the sentencing hearing. His mother and sister had been present at the hearing, ostensibly to testify in support of Lehrkamp. They left the hearing early, however, and did not testify.

¶8   Both parties agreed that Lehrkamp should be sentenced as a PFO due to his previous felony convictions. They disagreed, however, on which subsection of the PFO statute should apply. Lehrkamp argued that he should be sentenced under § 46-18-502(1), MCA, which applies to first-time PFOs and requires a minimum sentence of five years in prison. The State urged the court to sentence Lehrkamp under § 46-18-502(2), MCA, which applies to repeat PFOs and provides a minimum sentence of ten years in prison.

4

¶9 The court designated Lehrkamp as a PFO and sentenced him to ten years in prison with no time suspended, to run consecutively to his separate sentence for felony assault. The court stated that it read the PFO statute "more in line with what the state has presented," indicating that it was sentencing him under § 46-18-502(2), MCA. The court stated, however, that its sentence would be the same under either application of the PFO statute.

¶10 In its subsequent written judgment, the court listed twenty-three conditions that should apply "[a]t any time the defendant is placed in a community setting." The judgment also included a handwritten note, stating in part, "Defendant is not currently appropriate for community supervision. He is a repeat felony offender, and his actions and statements demand consequences." The court had not mentioned any parole restrictions or conditions on community placement in its oral pronouncement of sentence. Lehrkamp appeals.

## STANDARDS OF REVIEW

¶11 We generally do not address issues of prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial. *State v. Walton*, 2014 MT 41, ¶ 10, 374 Mont. 38, 318 P.3d 1024. We may review such issues, however, under the plain error doctrine. *Walton*, ¶ 10. We invoke plain error review only in situations that implicate a defendant's fundamental constitutional rights when failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Walton*, ¶ 10; *State v. McDonald*, 2013 MT 97, ¶ 8, 369 Mont. 483, 299 P.3d

5

799. The decision to invoke plain error review is a discretionary one that is to be used sparingly, on a case-by-case basis. *State v. Rosling*, 2008 MT 62, ¶ 77, 342 Mont. 1, 180 P.3d 1102.

¶12 Ineffective assistance of counsel claims present mixed issues of law and fact that we review de novo. *State v. Cheetham*, 2016 MT 151, ¶ 14, 384 Mont. 1, 373 P.3d 45. We review for legality a criminal sentence that includes at least one year of actual incarceration. *Rosling*, ¶ 59. Our review is confined to determining whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes. *Rosling*, ¶ 59. This determination is a question of law; as such, our review is de novo. *Rosling*, ¶ 59.

## DISCUSSION

¶13 *1. Whether Lehrkamp is entitled to a new sentencing hearing because the prosecutor's remarks amount to plain error.*

¶14 Lehrkamp argues that the prosecutor committed misconduct when he said during the sentencing hearing that he wished to "dispatch Mr. Lehrkamp in a permanent sort of way" and that a twenty-year sentence with ten years suspended would "give [him] and [his] family some solace that someone will be watching Mr. Lehrkamp for a very long time after he gets out of prison." Lehrkamp contends that the statements were improper and prejudiced the defense. Even though his attorney did not object to the prosecutor's

6

statements during the hearing, Lehrkamp urges this Court to review them under the plain error doctrine as a violation of his due process rights.

¶15 Prosecutorial misconduct constitutes reversible error only when it prejudices a defendant's "substantial rights." *State v. Otto*, 2014 MT 20, ¶ 15, 373 Mont. 385, 317 P.3d 810; *State v. Whitlow*, 285 Mont. 430, 445, 949 P.2d 239, 249 (1997). We measure prosecutorial misconduct "by reference to established norms of professional conduct." *State v. Ugalde*, 2013 MT 308, ¶ 43, 372 Mont. 234, 311 P.3d 772 (citation and internal quotations omitted). We do not infer prejudice from a prosecutor's improper comments; "rather, the defendant must demonstrate, from the record, that the prosecutor's misstatements prejudiced him." *State v. Dobrowski*, 2016 MT 261, ¶ 28, 385 Mont. 179, 382 P.3d 490 (citation and internal quotations omitted). Absent a timely objection, we will not review the prosecutor's actions on appeal unless they implicate a defendant's fundamental constitutional rights. *Ugalde*, ¶¶ 59, 60.

¶16 It is improper for a prosecutor to express a personal opinion as to a defendant's culpability. *See Dobrowski*, ¶ 30 (noting that "closing arguments which reflect a prosecutor's personal opinion as to the guilt of the defendant are improper" (citation and internal quotations omitted)); *State v. Stringer*, 271 Mont. 367, 380, 897 P.2d 1063, 1071 (1995) ("[W]e have recognized that the Rules of Professional Ethics prohibit a lawyer from asserting personal opinions as to . . . the guilt or innocence of the accused."); M. R. Prof. Cond. 3.4(e) (providing that, in the context of a trial, a lawyer shall not "state a personal opinion as to the justness of a cause . . . or the guilt or innocence of an

7

accused"). This principle applies not only at trial, but also in the context of sentencing hearings. *See State v. Kingman*, 2011 MT 269, ¶ 58, 362 Mont. 330, 264 P.3d 1104.

¶17 In *Kingman*, the prosecutor explained the State's rationale for its recommended sentence of twenty years' imprisonment by stating, "Some animals need to be caged . . . [Kingman] does not need to be treated with any sort of respect or admiration." *Kingman*, ¶ 54. We held that the prosecutor's remarks were "wrong," "inappropriate," and "improper." *Kingman*, ¶ 58. We reasoned that "treatment which degrades or demeans persons, that is, treatment which deliberately reduces the value of persons, and which fails to acknowledge their worth as persons, directly violates their dignity." *Kingman*, ¶ 58. We concluded, however, that Kingman was not entitled to resentencing because the prosecutor's remarks did not affect the District Court's sentencing decision. *Kingman*, ¶ 59.

¶18 A "prosecutor's role is to vindicate the public's interest in punishing crime, not to exact revenge on behalf of an individual victim." *Ugalde*, ¶ 114. A lawyer generally must not "act as advocate at a trial in which the lawyer is likely to be a necessary witness." M. R. Prof. Cond. 3.7(a). In *Stock v. State*, 2014 MT 46, 374 Mont. 80, 318 P.3d 1053, we relied on the Comments to Rule 3.7(a) of the American Bar Association Model Rules of Professional Conduct, which mirrors M. R. Prof. Cond. 3.7(a). The Comments explain that combining "the roles of advocate and witness can prejudice the tribunal and the opposing party." *Stock*, ¶ 14 (internal quotations omitted). They state also that a "witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It

8

may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." *Stock*, ¶ 14 (internal quotations omitted).

¶19    The prosecutor's remarks in the present case amounted to a personal plea that the court adopt the State's sentencing recommendation in order to provide "solace" to the prosecutor and his family. The prosecutor requested a lengthy sentence based not on the severity of the crime for which Lehrkamp was convicted—possession of dangerous drugs—but on the prosecutor's personal feelings about Lehrkamp's threatening comments in the recorded telephone conversations. By advocating for a sentence based on his personal feelings regarding Lehrkamp, the prosecutor exceeded his scope of "vindicat[ing] the public's interest in punishing crime." *Ugalde*, ¶ 114. In invoking the protection of his own interests—his own safety and that of his family—the prosecutor stepped into the role of crime victim and witness, thereby undermining "the objective detachment that should separate a lawyer from the cause being argued." *Ugalde*, ¶ 114. If the prosecutor planned to provide personal testimony on the basis of Lehrkamp's threats against him, a different attorney should have argued the case at sentencing. Instead, the prosecutor wrongly combined "the roles of advocate and witness." *Stock*, ¶ 14 (internal quotations omitted); s*ee* M. R. Prof. Cond. 3.7(a). His remarks violated "established norms of professional conduct" and were therefore improper. *Ugalde*, ¶ 43.

¶20    The prosecutor's improper comments implicated Lehrkamp's fundamental rights. If the remarks impacted the court's sentencing of Lehrkamp, failing to review for plain error could "result in a manifest miscarriage of justice, leave unsettled the question of the

9

fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *McDonald*, ¶ 8. We therefore use our discretion to review the claimed error in this case. *See Rosling*, ¶ 77. Accordingly, we address whether the comments prejudiced Lehrkamp and constitute reversible error. *See Otto*, ¶ 15; *Whitlow*, 285 Mont. at 445, 949 P.2d at 249.

¶21 The State recommended a sentence of twenty years with ten years suspended. The court declined to adopt the State's requested sentence. It instead imposed a sentence of ten years in prison with no time suspended. The court explained,

> Mr. Lehrkamp, you are a serious persistent felony offender. And the attitude expressed in this phone call does seem to permeate throughout your behavior here. On the other hand, I'm not—because I am looking at the [underlying] offense, I'm not going to go with what [the State] wants, which is 20 years with 10 suspended.

¶22 The court did not accept the prosecutor's plea for a lengthier sentence; on the contrary, it explicitly rejected the State's recommendation. The record demonstrates that the court based its decision on other factors, taken largely from the information in the Pre-Sentence Investigation report. That report includes not only the recorded telephone conversations, but also Lehrkamp's prior criminal record for felony assault, felony criminal endangerment, and two convictions of partner or family member assault from 2006 and 2007. The report describes Lehrkamp's behavior while under supervision for his 2008 criminal endangerment conviction and notes that he violated the terms of his supervision by using drugs and quitting his job without permission. The court properly took this information into account in fashioning Lehrkamp's sentence. *See Rosling*, ¶ 72 (stating that a court may "consider any evidence relevant to a defendant's sentence,

10

including evidence relating to the crime, the defendant's character, background history, mental and physical condition, and any other evidence the court considers to have probative force"). Lehrkamp has failed to "demonstrate, from the record," that the prosecutor's improper remarks prejudiced him by influencing the court's sentencing decision. *Dobrowski*, ¶ 28. Because Lehrkamp has not shown prejudice, we hold that the prosecutor's improper comments do not constitute reversible error. *See Otto*, ¶ 15; *Whitlow*, 285 Mont. at 445, 949 P.2d at 249.

¶23 *2. Whether Lehrkamp received ineffective assistance of counsel at the sentencing hearing.*

¶24 Lehrkamp argues that he received ineffective assistance of counsel when his attorney failed to request a continuance of the sentencing hearing so that his mother and sister could testify. He asserts that these two witnesses "would have provided testimony to ameliorate the damaging effects" of the recorded telephone conversations. In his view, the inability of these witnesses to testify might have adversely affected his sentence. He argues that his counsel had "no plausible justification" for failing to request a continuance so that they could testify.

¶25 "The United States and Montana Constitutions guarantee criminal defendants the right to effective counsel." *State v. Weber*, 2016 MT 138, ¶ 21, 383 Mont. 506, 373 P.3d 26. We analyze claims of ineffective assistance of counsel under the two-part test developed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *McGarvey v. State*, 2014 MT 189, ¶ 24, 375 Mont. 495, 329 P.3d 576. In order to prove ineffective assistance of counsel, a defendant must show

11

"(1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant." *McGarvey*, ¶ 24.

¶26 In order to show under the first prong "that counsel's performance was deficient," the defendant must demonstrate that counsel's representation "fell below an objective standard of reasonableness considering prevailing professional norms, and in the context of all circumstances." *McGarvey*, ¶ 25. "[T]he defendant must overcome a strong presumption that counsel's defense strategies and trial tactics fall within a wide range of reasonable and sound professional decisions." *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, 70 P.3d 1234. Under the second prong of the *Strickland* test, the defendant must "establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Turnsplenty*, ¶ 14. Claims of ineffective assistance of counsel "must be grounded on facts in the record and not on mere conclusory allegations." *McGarvey*, ¶ 24.

¶27 Lehrkamp's sentencing hearing was scheduled to begin at 3:00 p.m. on August 13, 2015. The hearing began forty minutes late, at 3:40 p.m. Lehrkamp's sister and mother initially were present at the hearing. According to Lehrkamp, they were prepared to testify about the recorded telephone conversations. When the court asked Lehrkamp's counsel if the defense had any witnesses, counsel answered, "No, Your Honor. Mr. Lehrkamp's sister and mother were present, but they needed to go to work at 4:00, so when we ran late, they had to leave." The court then asked Lehrkamp if he wished to "say anything before sentencing," to which Lehrkamp responded, "No, ma'am."

12

Lehrkamp's counsel later urged the court not to take Lehrkamp's threatening statements into consideration, asserting that he was merely "venting" when he made the remarks.

¶28　The record contains no evidence regarding the potential content of the witnesses' testimony. It is conceivable that Lehrkamp's counsel determined, as a matter of strategy, that the court would not grant a continuance, or that the witnesses' testimony would not materially affect the sentence. We cannot conclude that counsel's representation "fell below an objective standard of reasonableness." *McGarvey*, ¶ 25.

¶29　In addition, Lehrkamp cannot demonstrate prejudice—i.e., "that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Turnsplenty*, ¶ 14. As noted, the District Court based its sentence largely on Lehrkamp's prior record and behavior. The court also explicitly rejected the State's lengthier recommended sentence. The record suggests that any testimony explaining context for Lehrkamp's explicit language in the recordings would not materially have impacted the length of Lehrkamp's sentence. Lehrkamp thus has failed to demonstrate a reasonable probability that he might have received a shorter sentence had his counsel sought a continuance for his mother and sister to testify.

¶30　*3. Whether the District Court imposed an unlawful sentence by misapplying the persistent felony offender statute.*

¶31　Lehrkamp argues that the District Court incorrectly interpreted § 46-18-502(2), MCA—pertaining to repeat PFOs—and wrongly designated him as a PFO under that subsection of the statute. Lehrkamp contends that for § 46-18-502(2), MCA, and its ten-year minimum sentence to apply, the State was required to show that Lehrkamp was

13

previously designated as a PFO, which he was not. Lehrkamp argues that even though he legally could have been designated as a PFO at the time of his 2014 assault conviction, he does not qualify as a repeat PFO under § 46-18-502(2), MCA, because the State did not seek a PFO designation for the prior conviction.

¶32 Section 46-18-502(1), MCA, provides, with exceptions, that "a persistent felony offender shall be imprisoned in the state prison for a term of not less than 5 years or more than 100 years." Section 46-18-502(2), MCA, provides, with exceptions, that "an offender shall be imprisoned in a state prison for a term of not less than 10 years or more than 100 years" if, in part, the offender was a persistent felony offender "at the time of the offender's previous felony conviction."

¶33 Lehrkamp's sentence of ten years falls within the statutory range of both § 46-18-502(1) and (2), MCA. The court explained at the hearing, "I don't care even if you take it to the Montana Supreme Court and say, it could have been 5, I think 10 years is an appropriate amount given the entire circumstances here." In its written judgment, the court stated that it had made clear to the parties at the sentencing hearing that the sentence "would be the same whether the defendant was sentenced under Section 46-18-502(1), MCA, or Section 46-18-502(2), MCA." Regardless of which of the two subsections of the PFO statute applied, the court intended to sentence Lehrkamp to ten years in prison. The court's ten-year sentence therefore fell "within the parameters set by" § 46-18-502(1) and (2), MCA. *Rosling*, ¶ 59. The District Court's ten-year sentence was not unlawful. *See Rosling*, ¶ 59.

14

¶34    *4. Whether certain terms of the District Court's written judgment should be stricken for conflicting with the oral pronouncement of sentence.*

¶35    Lehrkamp argues that the written judgment's twenty-three recommended conditions for community supervision should be stricken because the court did not include them in its oral pronouncement of sentence. He contends similarly that the handwritten note on the written judgment constitutes a parole restriction, that the court did not mention a parole restriction in the oral sentence, and therefore that the note should be stricken from the judgment.

¶36    The State concedes that the twenty-three recommended conditions are unlawful because the court did not include them in its oral pronouncement of sentence. The State argues, however, that the court's handwritten note did not constitute a parole restriction, but rather explained the court's reasoning for the sentence imposed. In the State's view, the handwritten note did not add any terms not included in the oral sentence and is therefore not unlawful.

¶37    "The oral pronouncement of a criminal sentence in the presence of the defendant is the legally effective sentence and valid, final judgment. In the event of a conflict between the oral pronouncement and the written judgment, the oral pronouncement of a sentence controls." *State v. Harrison*, 2016 MT 271, ¶ 9, 385 Mont. 227, 383 P.3d 202 (citation and internal quotations omitted). In assessing whether such a conflict exists, we examine "whether a written judgment had, without notice, substantively increased a defendant's criminal sentence which had been previously imposed in open court." *State v. Thompson*, 2017 MT 107, ¶ 8, 387 Mont. 339, 394 P.3d 197 (citation and internal

15

quotations omitted). When a portion of a sentence is illegal and cannot be corrected, we remand with instructions to strike the illegal provision. *State v. Heafner*, 2010 MT 87, ¶ 11, 356 Mont. 128, 231 P.3d 1087.

¶38 In pronouncing its oral sentence, the District Court noted that Lehrkamp was a "serious persistent felony offender," that the attitude he expressed in the recorded phone conversations "permeate[d] throughout" his behavior, and that he had "earned [his] way to prison." The court's handwritten note in the judgment stated that Lehrkamp was "not currently appropriate for community supervision" and that he was a "repeat felony offender" whose "actions and statements demand consequences." The court placed the note near the end of the judgment, immediately after the sentence, "In imposing the foregoing sentence, the Court considered the pre-sentence investigation report."

¶39 We disagree with Lehrkamp's interpretation that the court's handwritten note constituted a restriction on parole and that it therefore conflicted with the oral sentence, which included no such restriction. The court's sentence, according to its statements at the hearing, was based in large part on Lehrkamp's status as a PFO and on his prior behavior. The note merely provides further explanation for the court's sentence, and it largely mirrors the reasons for the sentence that the court gave in its oral pronouncement. The note does not "substantively increase[ ]" Lehrkamp's sentence and thus does not unlawfully conflict with the court's oral pronouncement of sentence. *Thompson*, ¶ 8.

¶40 The parties agree that the twenty-three recommended conditions listed in the written judgment were not included in the oral pronouncement of sentence, that they are unlawful, and that they must be stricken. We agree that the proper remedy is to remand

16

with instructions that the District Court strike the recommended conditions. *See Heafner*, ¶ 11.

## CONCLUSION

¶41 The prosecutor's remarks at sentencing were improper, but they did not prejudice Lehrkamp and therefore did not constitute reversible error. Lehrkamp has not demonstrated that he received ineffective assistance of counsel. The District Court's sentence was not unlawful. The judgment is affirmed in part, but we remand to the District Court with instructions to strike the twenty-three recommended conditions for community supervision.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JIM RICE