FILED

05/24/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0711

DA 19-0711

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 99N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

KARI LYNN DERBY,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DC-18-91
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Shannon Sweeney, Attorney at Law, Palmer, Puerto Rico

       For Appellee:

       Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

       Ben Krakowka, Anaconda-Deer Lodge County Attorney, Anaconda,
Montana

       Submitted on Briefs: March 30, 2022

       Decided: May 24, 2022

Filed:

_____
               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      In September 2019, a jury in Anaconda-Deer Lodge County convicted appellant Kari Lynn Derby on one charge of aggravated driving under the influence (DUI) and one charge of assault on a peace officer.  The District Court entered its judgment and sentence on November 8, 2019.  Derby appeals her convictions to this Court and raises several issues with the trial below.  First, she argues that the State's amendment of the DUI charge on the first day of trial constituted trial error.  Second, she argues that permitting an expert from the Montana State Crime Lab to testify through video call violated her constitutional rights.  Third, she contends that the prosecutor's statements during closing arguments violated her due process rights by distorting the presumption of innocence and fairness of the trial.  We affirm.

¶3      Derby's arrest arose from police investigating an altercation between her and her brother.  She had allegedly driven away drunk, and officers later pulled her over near downtown Anaconda.  During the DUI arrest, she kicked an officer in the shin. The State's initial charges included partner-family member assault, child endangerment, and assault on a peace officer.  A year after filing the information and about a week before trial, the State

amended its information to drop the partner-family member assault charge and modify the child endangerment charge to a second-offense DUI.

¶4 The State's amended information charging the second-offense DUI lacked clarity. It cited a section of the aggravated DUI statute, § 61-8-465(3)(a), MCA, that pertained only to penalties and did not describe the actual basis for the charge. After Derby filed a motion to clarify or amend the information, the State altered its approach again. Instead of charging her for an aggravated DUI under § 61-8-465(1)(e), MCA, with the penalty at § 61-8-465(3)(a), MCA—the State sought to charge her with aggravated DUI under § 61-8-465(1)(a), MCA. The new charge allowed the State to rely solely on blood alcohol concentration and had a provision for a lesser penalty as a first offense under § 61-8-465(2), MCA.[1]

¶5 When the District Court held a hearing the day before trial, the State had not yet amended its information to reflect this change. The judge allowed the prosecutor to prepare the amended information during a recess. When the hearing resumed, however, the State's proposed second amended information again contained erroneous references to the relevant criminal statutes. The judge reluctantly allowed the prosecutor to file another motion to amend the information later that afternoon. The next day, the day of trial, the State came prepared with a revised second amended information. Once again, however, the document contained erroneous statutory citations. Understanding the intended charge as a first offense with the more lenient penalty provision, the District Court personally corrected the

---

[1] Montana's DUI statutes received an overhaul by the Legislature in 2021 and are now codified at Title 61, chapter 8, part 10, MCA.

information by interlineation. Derby was then arraigned on the modified charges, and the trial began that day.

¶6 Prior to trial, the State had moved to allow a witness from the Montana State Crime Lab to testify remotely via video call because he was scheduled to testify in another trial in another location that same day. This witness would speak to the results of Derby's blood-alcohol test. The State filed another motion to the same effect after a continuance caused Derby's trial to be rescheduled; again, the toxicologist from the State Crime Lab was scheduled to provide testimony elsewhere, and the State requested permission to have him testify by video. Prior to filing each of these motions, the State contacted Derby through her counsel, who indicated that they would not object. The District Court granted the motions.

¶7 At trial, the toxicologist appeared by video call, and Derby raised no objection and conducted no cross-examination of this witness. Derby's trial strategy was essentially to concede the DUI conduct but defend the assault charge. During opening statements, Derby's attorney informed the jury that "[y]ou're going to see evidence today that Kari made a bad decision, a really bad decision and she got behind the wheel of her car while intoxicated." And at closing, Derby's attorney contended that "the State's going to ask you to convict Ms. Derby of two crimes when the state can only show that one crime was committed."

¶8 The prosecutor's closing arguments at trial included the following phrasing about the burden of proof:

> When we started this endeavor you had to come in and you had to promise that you would view the Defendant as being innocent. Not just not guilty, innocent, because at the beginning of this trial the State had not put on any evidence. The situation has changed now. You've been given the evidence . . . .

The prosecutor also went on to discuss the legal standard for the charge of assault on a peace officer, attempting to make clear that "[s]he doesn't have to kick him hard . . . it has to hurt." The prosecutor argued that a common response to someone's kick in the shins might be to "knock their block off" but that the police officer in Derby's case took the better approach to "trust the process" and see the charge handled in court. Although the officer continued to act professionally and did not react melodramatically to the kicks, the prosecutor explained that they nevertheless met the standard for assault.

¶9 The jury convicted Derby on both counts, and Derby now appeals. She argues that the District Court abused its discretion in permitting the late-hour amendment to her charges, that the remote testimony of the crime lab expert was unconstitutional, and that the prosecutor's statements in closing argument were improper and should warrant a new trial.

¶10 We review a district court's decision to permit an amendment to a criminal complaint or charging document for abuse of discretion. *City of Red Lodge v. Kennedy*, 2002 MT 89, ¶ 10, 309 Mont. 330, 46 P.3d 602. We review constitutional questions de novo. *State v. Mercier*, 2021 MT 12, ¶ 11, 403 Mont. 34, 479 P.3d 967. We generally do not address "prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial," but we may review such issues under the plain error doctrine. *Mercier*, ¶ 13 (citing *State v. Lehrkamp*, 2017 MT 203, ¶ 11, 388 Mont. 295, 400 P.3d 697).

¶11 Derby argues on appeal that the late-hour amendments to her charging documents were illegal and prejudiced her trial preparation. An information must reasonably apprise the accused of the charges faced, to provide an opportunity to prepare and present a defense. *Kennedy*, ¶ 10 (citing *State v. Allen*, 278 Mont. 326, 330, 925 P.2d 470, 472 (1996)). Montana law makes the application of this standard specific: if a change to the charges is substantive, it is only permitted at least five days prior to trial, but the court may permit an amendment "as to form at any time before a verdict or finding is issued" and as long as "the substantial rights of the defendant are not prejudiced." Section 46-11-205, MCA.

¶12 Key to our review of a district court's decision to allow an amendment is the question of whether the defendant had "fair warning of the nature of the conduct declared to constitute an offense." *State v. Tower*, 267 Mont. 63, 66, 881 P.2d 1317, 1319 (1994). Here, although the State's effort to correct the information was clumsy and dragged into the morning of trial, Derby faced no surprise about what she was being charged with, and she had flagged the problem about the distinction between a first and second offense at least a week earlier. The conduct for which the State charged Derby was never in question: intoxicated driving on the day of the arrest. What the State did change was the penalty it sought—a second-offense aggravated DUI carries a greater sentence than a first-offense aggravated DUI. But the conduct underlying the charge, and the high blood alcohol concentration the State sought to prove, remained clear to Derby both before and after the amendment. Furthermore, Derby cannot argue that her substantial rights were prejudiced because the State's amendment worked to her benefit. Her defense at trial remained

6

focused on the same conduct, but she risked a lesser penalty. We have previously recognized a lack of prejudice when an amended information referenced repeat offenses that would *strengthen* the penalty, as long as the charged conduct did not change. *See State v. Gardipee*, 2004 MT 250, ¶¶ 8-9, 323 Mont. 59, 98 P.3d 305. The same approach is even more appropriate here, where the State abandoned reference to repeat offenses and *weakened* the penalty. Moreover, Derby's trial strategy involved conceding the DUI conduct and focusing on the assault charge. Such a defense is not prejudiced by (and again only benefits from) the amendment to a lesser charge. The District Court did not abuse its discretion.

¶13    Derby next argues that allowing the toxicologist to testify by video violated her constitutional rights. The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution each provide criminal defendants a right to confront witnesses against them. The Montana constitutional provision specifically affords this right to confrontation "face to face," and we have previously held that video testimony can sometimes be unconstitutional if the State lacks an adequate showing that it was impossible or impracticable to examine the witness in person. *See State v. Bailey*, 2021 MT 157, ¶¶ 40-49, 404 Mont. 384, 489 P.3d 889; *Mercier*, ¶¶ 26, 28.

¶14    However, "[a]bsent plain error, allegations that constitutional rights have been violated cannot be raised for the first time on appeal." *State v. Christensen*, 2020 MT 237, ¶ 78, 401 Mont. 247, 472 P.3d 622 (citing *State v. Minez*, 2004 MT 115, ¶ 30, 321 Mont. 148, 89 P.3d 966). Derby had ample opportunity to invoke her rights under the Confrontation Clause in District Court: first in response to either of the State's motions to

7

permit the remote testimony, once when prompted by the District Court in a pretrial conference, and again at trial when the State introduced the witness. By failing to object at any of these times below, Derby failed to provide the District Court an opportunity to consider this matter, and she failed to preserve the issue for this Court to review. *See State v. LaFreniere*, 2008 MT 99, ¶ 11, 342 Mont. 309, 180 P.3d 1161; § 46-20-104(2), MCA ("Failure to make a timely objection during trial constitutes a waiver of the objection.").

¶15 Furthermore, appellants must directly assert and satisfy the standard for plain error to raise and make an unpreserved argument on appeal. *State v. Strizich*, 2021 MT 306, ¶ 33, 406 Mont. 391, 499 P.3d 575. The doctrine is one we apply "sparingly, and only on a case-by-case basis" dependent on the gravity of the error and the extent of prejudice against the defendant. *State v. Lawrence*, 2016 MT 346, ¶¶ 6, 9, 386 Mont. 86, 385 P.3d 968; *Mercier*, ¶ 35. Derby has not invoked our plain error doctrine and instead frames her argument in a manner more appropriate for first impression in District Court—where, as noted, she fully acquiesced in the remote testimony of the crime lab expert. And beyond her failure to object, Derby's trial strategy involved conceding the DUI charge, so she cannot argue that the purported Confrontation Clause violation prejudiced her defense and led to her conviction. Based on the facts of Derby's case, we are unable to conclude that the fundamental fairness of her trial was implicated by the video appearance of the toxicologist, and we decline to consider the issue under plain error review.

¶16 Derby also did not object at trial to the prosecutorial comments she now challenges on appeal. Our review, therefore, is again limited to plain error and the risk of a "manifest miscarriage of justice" or damage to the "fundamental fairness of the proceedings" or

"integrity of the judicial process." *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091. To assess alleged prosecutorial misconduct, we first consider whether the challenged comments were in fact improper and then whether they prejudiced the defendant's right to a fair and impartial trial. *State v. Dobrowski*, 2016 MT 261, ¶ 28, 385 Mont. 179, 382 P.3d 490.

¶17 Derby's first argument is that the following statement the prosecutor made to the jury distorted the State's burden of proof and damaged the integrity of the trial:

> When we started this endeavor you had to come in and you had to promise that you would view the Defendant as being innocent. Not just not guilty, innocent, because at the beginning of this trial the State had not put on any evidence. The situation has changed now. You've been given the evidence . . . .

According to Derby, this rhetorical framing is equivalent to that in an earlier case when we reversed and remanded for a new trial. In *Lawrence*, a prosecutor argued to the jury that "[t]he presumption of innocence that you came into this trial with no longer exists at this point." *Lawrence*, ¶ 12. We stressed the importance of the presumption of innocence, emphasized that "it is improper to say that the presumption may be removed from a defendant," and explained that "the presumption endures throughout the deliberations of the jury and may only be overcome by evidence which satisfies the minds of the jurors beyond a reasonable doubt." *Lawrence*, ¶ 15 (internal quotations omitted).

¶18 But we do not find the prosecutor's comments in Derby's case to be equivalent to the improper comment in *Lawrence* or to distort the burden of proof. Unlike in *Lawrence*, where the prosecutor argued directly that the presumption of innocence no longer existed, here, the prosecutor only commented on the change in what evidence the jury had seen.

9

The prosecutor's argument in Derby's case—like most closing arguments—was that between the beginning and the end of the trial the State had provided the evidence necessary for proof: "[A]t the beginning of this trial the State had not put on any evidence. The situation has changed now." Such a comment is wholly different from telling the jury that they no longer even need to start from a presumption of innocence.

¶19 Derby's next argument is that the prosecutor violated the integrity of the trial in his comments about the severity of Derby's kicks to the officer's shins. Prosecutors may not offer their own personal opinions about guilt or innocence to the jury or attempt to bolster a witness's credibility. *Hayden*, ¶ 28. "[I]t is highly improper to characterize either the accused or the witnesses as liars or offer personal opinions as to credibility." *State v. Stringer*, 271 Mont. 367, 380, 897 P.2d 1063, 1071 (1995). A prosecutor may "point out and comment on contradictions and conflicts" in the evidence or testimony, but "a prosecutor's expression of guilt invades the province of the jury." *Stringer*, 271 Mont. at 380.

¶20 Derby argues that when the prosecutor commented about how the assault did not depend on how anguished or dramatic the officer's reaction was, he improperly injected his personal views about the professional courteousness of the officer and implicitly condoned retributive violence with his "knock their block off" aside. She argues that such comments violate the fairness of the trial by encouraging the jury to rule not based on the evidence but based on some sense of obligation toward the officer manufactured by the prosecutor. Derby also takes issue with a statement the prosecutor made about her BAC level, that she was "loaded," attacking it as a personal opinion.

¶21 We conclude that these prosecutorial comments did not invade the province of the jury or prejudice Derby's right to a fair trial. Cases such as *Hayden*, in which we have found plain error, have involved numerous improper comments and overt bolstering or opinionated assertions about the credibility of evidence. *See Hayden*, ¶¶ 29-33 (involving the prosecutor's "own opinion as to witnesses' testimony" and believability, as well as efforts to elicit direct testimony from police officers that other witnesses were truthful and should be relied upon). Here, the prosecutor may have been overly colloquial in referring to Derby's BAC level—which registered over three times the legal limit—as "loaded," but such a comment is not akin to twisting the jury's arm in weighing the evidence. Further, Derby conceded the DUI charge in her closing statement, thus seriously undermining her assertion that the jury could have unfairly relied on the prosecutor's colorful language.

¶22 The prosecutor's statements about the assault charge are equally insufficient to invoke plain error. These comments did not say anything about the presumption of innocence, did not offer the prosecutor's own opinion on the evidence, and did not improperly bolster any witness testimony. What they were was an attempt by the prosecutor to show the jury that the evidence in the case met the elements of assault on a peace officer, despite the context of the officer's composed response. "Juries are presumed to follow the law as given them." *State v. Labbe*, 2012 MT 76, ¶ 28, 364 Mont. 415, 276 P.3d 848 (quoting *State v. Turner*, 262 Mont. 39, 55, 864 P.2d 235, 245 (1993)). We do not presume the jury would be so swayed by the prosecutor's use of a word like "professional," or his comparison between a hypothetical violent reaction and the formal charges, that they would abandon their task of weighing the evidence under the law.

11

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶24 The District Court's November 8, 2019 order of judgment is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE